No. 9776.

## BERTRAND SALOY VS. HIBERNIA NATIONAL BANK.

1. A bank which has received from a depositor, as collateral security for an account there overdrawn, or which may be overdrawn subsequently, certain certificates or bonds payable to bearer at a future day for value, is entitled to hold the same as against one

claiming ownership thereof and alleging that *one whom he had constituted* the depositary of same had misappropriated them—unless the claimant shall allege and prove that the bank's acquisition was *mala fide*.

2. A vendor of real estate that is charged with a general mortgage, who deposits with the notary passing the title, a sum of money or valuable securities as a guarantee that he will procure the erasure of same, incurs the risk of the deposit.

APPEAL from the Civil District Court for the Parish of Orleans. Lazarus, J.

*Robt. Mott* for Plaintiff and Appellant.

*T. Gilmore & Sons* for Defendant and Appellee.

The opinion of the Court was delivered by

WATKINS, J. It is the object of this suit to recover the possession of certain bonds of the city of New Orleans, known as certificate bonds issued under Act 58 of 1882—two being of the denomination of $1000 each and ten of $50 each, and all of the aggregate amount of $2500— of which plaintiff claims the ownership.

He claims that on the 1st of October, 1885, he executed a title to a certain piece of immovable property described, to Mrs. Magioni, before William J. Castell, a notary public of the city of New Orleans, which was subject to a general mortgage, the erasure of which he obliged himself to the vendee to procure, and to guarantee the performance of this contract, he deposited the aforesaid bonds with the notary, until he should produce evidence of the cancellation of the mortgage.

For these bonds a receipt was executed on the 1st of October, 1885, by W. J. Castell, notary, per Jas. J. Woulfe, expressing the purpose thereof as above set forth.

On the 1st of January, 1886, plaintiff called for the bonds, but they were not to be found among the papers of Castell, who had in the mean time died; but upon enquiry they were ascertained to be in defendant's possession.

In its answer the bank says that it is holder and pledgee of the twelve certificates or bonds which it received from William J. Castell as collateral security for moneys advanced and to be advanced to him, and to be applied to same, and to cover any balance that might remain due to the bank on the account of Castell.

It also represents that, at the time of Castell's death, he was indebted to the bank in a balance of $4,913.25, which is still due and

owing, and for which the said certificates or bonds stand pledged; and that defendant is a holder of them in good faith, for a valuable consideration, before maturity, and that same are payable to bearer and negotiable and transferable by delivery only and without indorsement.

Defendant claims that on the 30th of September, 1885, Castell was duly notified that his account was overdrawn, and three days thereafter he pledged the bonds to the bank to cover his account, as well as the amount of his overdraft as any future overdraft that might occur.

Plaintiff's counsel admits in brief that "the testimony of Mr. Palfrey is clear to the point that the deposit of the bonds was made to cover the overdraft, and Mr. Woulfe's statement was made regardless of the facts," etc. Also that "the bank afterwards continued to allow Mr. Castell to further overdraw his account, far in excess of the value of the bonds; and he was overdrawn when he died in the sum of $4,913.25," the exact sum claimed by defendant.

On this statement of facts, the sole question presented for consideration is whether the certificates were pledged to the bank "in the ordinary course of business," or "under such circumstances as should have put the bank upon inquiry."

The plaintiff argues to the effect that the bank transacted with the notary as a *quasi* officer of that institution, whose conduct was such as to have inspired doubt of the transaction, and the same was *out of* the usual course of trade, "the holder being neither a broker, a dealer in securities, or a merchant covering an account." He insists that, as Mr. Castell was the notary of the bank, and a creditor thereof for professional services, he was "a *quasi* officer" thereof, and hence—inferentially—notice of the illegality of the transaction was sufficiently brought home to defendant to have put it on inquiry.

This argument is untenable. There is nothing in the record to establish that proposition. The fact that Mr. Castell was usually employed by defendant to perform certain services as notary, in the course of its business, does not constitute him a *quasi* officer of the bank.

The evidence satisfies us that Mr. Castell's account was, on the 30th of September, 1885, overdrawn for more than $2500, the amount of the certificates deposited on the 4th of October following.

Subsequently his account was diminished by deposits and increased

by checks, alternately, until, at his death, he was indebted to the bank in excess of $4000—more than sufficient to consume the deposit.

In Brown vs. Schmidt, 7 Ann. 349, it was held that "the purchaser of property who, without authority, pays the price into the hands of the notary, incurs the risk of the deposit," and if the notary embezzle the money the purchaser must sustain the loss.

In Arby vs. Ducatel, 18 Ann. 470, the Court said: " The law has not made it the official duty of a notary to receive money to erase mortgages." 20 Ann. 78, Monrose vs. Brocard.

In Givanovich vs. Citizens' Bank, 26 Ann. 15, the Court held that Ducros was indebted to the bank when the notes were placed in its possession as collateral security therefor, and that the bank had the right to thus receive them. That Ducros was lawfully in possession of them, and, as to third persons, the owner of them; and could dispose of them at pleasure.

The responsibility was from Ducros to *his* principal, and not from the bank to plaintiff.

That case involves a like principle to the one under discussion here.

In Fairfax vs. Beer, 37 Ann. 821, this Court held that "the transferee for value, of negotiable securities not due, from the possessor and apparent owner, gets a title which cannot be defeated without proof of *actual* or *constructive notice* of the imperfect title of the transferor, amounting to *mala fides*."

The burden of proof was on the plaintiff to establish such actual or constructive notice to defendant of Castell's imperfect title to the certificates in question.

The legal presumption is that the holder of a negotiable instrument has acquired it without notice of anything to impeach his title.

In Collens vs. Gilbert, 94 N. S. 753, the Supreme Court held that "the title of a *bona fide* holder for value, of an accepted draft indorsed in blank, is not affected by the fact that the party from whom he received it, before its maturity, had possession of it for certain purposes and misappropriated it." Shaw vs. Railroad Company, 101 U. S. 563; Brown vs. Sheppard, 95 U. S. 481.

There is no evidence in the record that impeaches the good faith of the defendant. We think the judgment appealed from is correct.

Judgment affirmed.