## No. 10,064.

### ROBERT N. COCHRANE vs. MRS. ALICE DICKENSON.

The transferee of a negotiable instrument, such as a promissory note made payable to the order of the maker and by him endorsed in blank, holds the instrument clothed with the presumption that it was negotiated for value in the usual course of business, before maturity and without notice of any equities between the prior parties to the instrument. That presumption is not rebutted by proof that the notes had been negotiated by an agent of the maker, contrary to the latter's instructions, who had left them in the possession of the agent for future negotiation according to special instructions to be given, and which were never given, without proof that such circumstances were made known to the transferee at the time, or in default of evidence tending to show that the transferee was not in good faith.

APPEAL from the Twenty-sixth District Court, Parish of Jefferson. Rost, J.

---

G. A. Breaux and H. E. Upton for Plaintiff and Appellant:

1.  The renewal of a note and mortgage between the same parties, though the interest which has accrued be added to the principal, is no novation.  It is but a continuance of the same transaction.  Novation is the substitution, either of a new creditor, a new debtor, or a new debt.  C. C. 2185; Rosenda vs. Zabriska, 5 N. S. 157; 4 R. 493; 34 Ann. 534.

But receiving new notes operates no novation.  Hobson vs. Davidson, 4 Mart. 431; Poth-

ier Oblig. No. 559; Merlin Rep. de Jur. Novation, § 5; Parson's Notes and Bills, Vol. II. p. 205, note.

The renewal note is of the same illegitimate progeny as the first. Edwards on Bills and Promissory Notes, pp. 351, 352.

2. Where the original note is without consideration, a note given in renewal thereof is likewise without consideration Copp vs. Sawyer, 6 N. H. 386; 5 Pick. 391; Parsons on Notes and Bills, pp. 178 and 179.

Neither the rendition of an account nor giving of notes can prevent the defendant from showing errors and inquiring into the consideration of a note in a suit against him. 16 Ann. 240; 13 Ann. 234, 413; 12 Ann. 20; 26 Ann. 668; 23 Ann. 312.

3. The rule of law, that he who takes a note over due and dishonored, takes it encumbered with all the equities between the prior parties to it, is the law of Louisiana, as well as of those States which have adopted the common law. 6 Wall. 492.

The purchaser or pledgee of negotiable instruments after maturity, whose rights are derived from one who was not the owner, and who was not authorized to sell or pledge, acquires no right or title thereto, or thereupon, as against the true owner. Stern Brothers vs. Germania National Bank, 34 Ann. 1119, and authorities; C. C. 2252. The sale of a thing belonging to another person is null. This applies to past due obligations to pay money, as well as other property. 28 Ann. 70; 31 Ann. 215; 7 Wall. 700; 21 Wall. 143; 10 Wall. 90; 4 Peters, 321; 99 U. S. 440; 26 Ann. 556; 13 Ld. 214.

The doctrine is invoked, that where one of two innocent parties must suffer, the loss should fall on the one who enabled the third party to commit the fraud. This objection to the application of the principle now under discussion is not new. 34 Ann. 1121. It has been made, considered and overruled, both by the Supreme Court of this State and the Supreme Court of the United States. 6 Wall. 493; 28 Ann. 70; 34 Ann. 1121.

4. Where the existence of the consideration is expressly put at issue and doubt and suspicion cast upon its reality, the burden of proving it is thrown upon the payee. 15 Ann. 41.

5. To fix acquiescence on a party, it must unequivocally appear that he knew, or had notice of the fact upon which the alleged acquiescence is founded, and to which it refers. * * A recognition resulting from ignorance of material facts goes for nothing. The question as to acquiescence cannot arise unless the party against whom it is set up was aware of his rights. A man cannot be said to acquiesce in what he does not know, nor can he be bound by acquiescence, unless fully apprised of his rights and all the material facts and circumstances of the case. Nor, indeed, is a recognition of avail which assumes the validity of a transaction, if the question as to its validity does not appear to have come before the parties. Kerr on Fraud and Mistake, pp. 300 and 301, and authorities cited.

The acts from which ratification is to be deduced must evince such intention clearly and unequivocally; none will be inferred when those acts can otherwise be explained. Rivas' Heirs vs. Bernard, 13 L. 169 (176); Copeland vs. Michie, 17 L. 286.

To bind a man by ratification, it must appear that he knew with precission what act he was ratifying, and what defect he was waiving. Knight vs. Mentz, 23 Ann. 538.

6. Where the legal principle is confessedly doubtful, and one about which ignorance may well be supposed to exist, a person, acting under a misapprehension of the law, will not forfeit any of his legal rights by reason of such mistake. In "fraud," as distinguished from "mistake," there is necessarily a misapprehension or mistake in the party defrauded, which alone would not vitiate his dealings with others; but there is the additional circumstance that the party, with whom he deals, intentionally causes the mistake for the purpose of effecting the dealing, and this precludes the party so occasioning the mistake from holding the other bound to it. Kerr on Fraud and Mistake, pp. 399, 406, and authorities.

Money paid voluntarily under mistake of fact, is recoverable both at law and in equity. Kerr on Fraud and Mistake, p. 415, and authorities.

Cochrane vs. Dickenson.

Error in law, as well as error in fact, invalidates a contract, where such error is its only or principal cause. R. C. C. Art. 1846.

Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or cause an inconvenience or loss to the other. R. C. C. Art. 1847.

Fraud, like every other allegation, must be proved by him who alleges it; but it may be proved by simple presumptions, or by legal presumptions, as well as by other evidence. The maxim, that fraud is not to be presumed, means no more than that it is not to be imputed without legal evidence. R. C. C. Art. 1848.

7. Parol evidence is admissible between the parties to show error in an act of mortgage. The doctrine of estoppel cannot be extended to a case of that description, particularly in a suit brought to correct the fundamental error which arises between the original parties, and especially when the plea is urged by the representatives of the party against whom error is charged, and who is represented by them as having fraudulently caused the error. 36 Ann. 549; 33 Ann. 1036, and authorities cited.

It is a universal rule of jurisprudence that parol testimony is admissible to defeat written contracts when fraud is alleged; and error is often akin to fraud. 35 Ann. 561; 36 Ann. 550, and authorities cited.

*Leovy & Blair* for Defendant and Appellee.

The opinion of the Court was delivered by

POCHÉ, J.   The object of this suit is to enjoin an executory process sued out by the defendant, as the holder and owner of four promissory notes, amounting together to $10,400, which notes are alleged to be null and void for want of consideration, and as having been obtained from plaintiff by the defendant by means of fraud and through misrepresentation.

Plaintiff alleges that, on the 2d of February, 1882, he executed two promissory notes, of $5000 each, payable one year after date, and signed an act of mortgage, intended to secure the payment of said notes, which he left in the possession and custody of the late William J. Castell, a notary public, before whom he signed the act of mortgage aforesaid, and whom he instituted as his agent, for the purpose of negotiating said notes, at some future time, under his instructions, whenever he would need the amount of money which they were intended to secure.   He then states that, although he had never authorized the actual negotiation of the notes, they were found in the possession of defendant, a short time after the death of Castell, which occurred on the 14th of November, 1885, the same having been illegally and wrongfully negotiated by said Castell to said defendant, long after their maturity, and without consideration to him, plaintiff in injunction.

He then represents that on the 30th of November, 1885, he executed the four notes sued on by the defendant, intended to represent the

9

aforesaid two notes of $5000 each and accrued interests, which he secured by an act of mortgage of the same date, in error of his rights, through unlawful and fraudulent representations and without consideration. Hence, he contends that the new notes, being tainted with the same nullity which characterized the original notes of $5000 each, he is not liable for the same.

The defence is substantially that the two notes of $5000 each, which were in form negotiable instruments, transferable by delivery, were acquired by defendant from William J. Castell before maturity, and for valuable consideration, equal to the face value of the same, and that said notes remained her lawful property until the 30th of November, 1885, when they were surrendered or returned to plaintiff in exchange for the four notes now held by her and now in suit. She also avers that from the month of May, 1882, at which time she purchased said notes, until September, 1885, her aforesaid notes, together with other valuable papers, were left by her for safe keeping in the custody of said Castell, through whom, as defendant's agent, she annually received payment of the interests becoming due on said notes, amounting in the aggregate to $2400.

She further states that, at the instance of plaintiff, she accepted, in lieu and stead of said notes, the four notes now in suit, secured by mortgage executed on the same day, November 30, 1885, on condition, required by plaintiff, that said new notes be made payable in one, two and three years from date, and of her allowing a mortgage in favor of another creditor of plaintiff, to secure a debt of $5000, of the same rank as the mortgage which secured her aforesaid notes.

She, therefore, contends that, by executing said new notes and mortgage, by paying a portion of one of said notes, without objection, and by other similar acts, plaintiff has fully ratified the act of his agent, Castell, in negotiating the original notes of $5000 each.

The judgment below was in favor of defendant, and plaintiff appeals.

The uncontested facts of the case are as follows: Plaintiff had for many years been a constant client and customer of the late W. J. Castell, with whom he had close and confidential business relations, consisting in notarial business, and also in negotiating loans of money, represented by notes intrusted to him for that purpose, which notes were generally secured by means of mortgages executed before Castell, as a notary. Castell had many other similar clients for whom he negotiated loans on notes and mortgages, similarly executed, and

Cochrane vs. Dickenson.

it appears that, in his usual dealings in that capacity, he had previously negotiated sundry notes to Mrs. Dickenson, the defendant herein.

Now, in reference to the particular transaction involved herein, the record shows that plaintiff, in anticipation of an approaching want of funds, signed, on the 2d of February, 1882, two notes, of $5000 each, payable one year after date, to be secured by mortgage on a valuable piece of property (the same which is now under seizure), in furtherance of which he affixed his signature to a blank printed form of mortgage generally used by Castell, leaving the notes in the latter's possession, as his agent, for the purposes of future negotiation in accordance with the instructions to be given to the agent by him.

The notes remained in the physical possession of Castell until the month of September, 1885, during which interval the maker of the notes, on several occasions, in answer to his inquiries, was informed by Castell that they had not yet been used or negotiated.

The act of mortgage was never completed, and was found after Castell's death in the same unfinished condition in which it had been left by Cochrane on the 2d of February, 1882.

About a week after the death of Castell, Cochrane discovered that the notes were in the possession of, and held by, the defendant, Mrs. Dickenson, who soon thereafter made demand for the payment of the same. After consultation with their respective counsel, the parties agreed upon the contract evidenced by the act of mortgage of November 30, 1885, as hereinabove stated.

The amount of the capital ($10,000) was represented by three notes of equal amounts, payable in one, two and three years, and the sum of $800, representing interests on the two retired notes of $5000 each, from the 2d of February, 1885, to the same day and month of 1886, was incorporated in a fourth note, payable on the 31st of March, 1886.

At the maturity of that note, plaintiff made a part payment of $410 on the same, and claimed the indulgence of defendant for time to meet payment of the balance due thereon.

All the other pertinent facts in the case are seriously contested, and the truth must be sought out of very conflicting testimony. As a result of the foregoing statement of uncontested facts, the legal attitude of Mrs. Dickenson, touching the two original notes of $5000 each, at the date of the new contract, on November 30, 1885, was that of the holder of negotiable instruments, from which flows the presumption, well established in American jurisprudence and resting on

commercial law, that they were negotiated "for value in the usual course of business at the time of execution, and without notice of any equities between the prior parties to the instrument." Collins vs. Gilbert, 94 U. S. Reports, p. 754; Fairen vs. Bier, 37 Ann. 824; Saloy vs. Hibernia National Bank, 39 Ann. 90.

The burden of proof to support plaintiff's contention that the notes were negotiated long after maturity, so as to open the door for evidence of equities between Castell and himself, is therefore on him.

The elements of his evidence on the point consist of his own testimony, going to show that the execution of the notes and his signature to the projected act of mortgage were mere initiatory steps towards a future negotiation of the notes, not to be affected in the absence of new and special instructions to that effect, which he never gave, going also to show that, on several subsequent occasions, Castell had assured him that the notes which he exhibited to him had not yet been used or negotiated, the last occasion being within six months or one year at most previous to Castell's death. He also relies on the projected act of mortgage which was never completed, and stands yet without the signature of the notary.

As that evidence is uncontradicted, it must be held sufficient *prima facie* to rebut the presumption in favor of defendant's acquisition, and to shift the burden of proof on her to substantiate her averment that the notes had been acquired by her before maturity.

This requirement is met by her own testimony, in which she states that some time in April, 1882, she called on Castell, informing him that she desired to make an investment of funds, and asking him if he had any good mortgage paper on hand for disposition in that way. Castell then offered her the two notes, of $5000 each, in question; but she then only had $5000 on hand, which were not sufficient for the amount of the notes. But as she expected soon to realize additional funds, it was agreed that by handing $5000 to Castell he would hold the notes for her, which was accordingly done. A few days afterwards she produced the additional amount of $5000, and the transaction was then closed, the two notes having been then and there delivered to her by Castell. But before leaving his office she concluded to leave the notes in his custody for safe keeping, where they remained, subject to her order, until some time in Septemper, 1885, at which time she took them in her own possession, for the reason that she feared that Castell would die in a short time. His death occurred on the 14th day of November following. She states that in February of each of the years 1883, 1884 and 1885 the interests

due on the notes were settled with her by Castell, as the agent of the maker, giving her credit in a running account which he had with her, embracing other moneyed transactions operated between them, and endorsing the fact of such payments on the back of each note at each settlement.

Her testimony is corroborated by several incidents shown by the record, among which are the following:

The first sum of $5000 handed to her by Castell was by means of a check, which he filled up in his own writing for her, made to her order and endorsed by her, on which she drew the money and immediately brought it over to him; the check, dated 22d of April, 1882, is in the record.

The second sum of $5000 handed to Castell was in a check, under date of May 3, 1882, for $3440, drawn, executed and collected in the same manner; in a sum of $350 in currency, and finally in a bond valued at $1210, accompanied by a memorandum, shown to be in his handwriting, containing an addition of the figures $3440 and 1660 = to $5000.00. The two notes in question also contain the endorsed payments of interest at each of the dates hereinabove stated.

An extract from the books of Castell also shows that defendant's account with him was credited with the interests corresponding with the amounts and dates as endorsed on the notes.

The record also contains a certificate made out and signed by Castell, who therein acknowledges that, among other valuable papers, he held, on July 1, 1884, for, and as the property of, Mrs. Dickenson the two Cochrane notes of $5000 each. And all this is additionally corroborated by the testimony of defendant's daughter who was present at Castell's office on several occasions when the settlement of interests took place, and the same were entered on the back of the notes. This same witness was also present at her mother's house when Cochrane, on the 3d of April, 1886, made the part payment of the interest note of $800, on which occasion he uttered no complaints against the acts, doings and transactions of Castell, his agent in the premises, and when, in answer to defendant's inquiry, he stated that he had not received *all* of the amount for which his note had been negotiated.

Her testimony is in the main corroborated by that of her brother, who, in addition, relates two conversations which he had with Cochrane in reference to this business, in which the latter took occasion to explain the reasons for which he had issued the two notes in question, and during neither of which he ever intimated that there was anything wrong about the transaction through which Mrs. Dicken-

son had acquired the ownership of those notes. In the attempted re-' futation of all that evidence which is actually overwhelming, when considered with reference to the difficulties which surrounded the defendant by reason of the death of Castell, the most important factor in the case, plaintiff's sole reliance is on his own testimony, and on circumstances of doubtful aspect and of suspicious appearance.

The leading fact deduced from his testimony, which is to the effect that Castell had repeatedly informed him that his notes had not yet been used or negotiated, and that he exhibited them to him on each of those occasions, is not essentially imcompatible with the fact that the notes had really been acquired in good faith by Mrs. Dickenson. That circumstance is satisfactorily explained by the proof in the record that after her purchase of the notes Mrs. Dickenson had left them in the custody of Castell, at his own suggestion and for reason which are too plain and too apparent to require any further elucidation.

He also invokes the fact that in the paraph of one of the notes the date is February 2, 1884, instead of 1882, which is the date in the paraph of the other note and of the execution of both. We attach no importance to that circumstance, which is either a clerical error, or a fraudulent design of plaintiff's agent intended to the detriment and not to the advantage of Mrs. Dickenson.

She dealt with him in absolute good faith and in full trust in his judgment as well as in his honesty, having been entirely guided by her confidence in his representations as to the validity of the mortgage, of plaintiff's titles to the property, its value on the market, and in all matters touching the value of the securities which she was buying. As the act of mortgage is avowedly incomplete and conferred no rights whatever, the date of the paraph on the notes loses all significance, at least in so far as it is invoked to assail Mrs. Dickenson's good faith. Nor do we find any element of fraud in her conduct throughout the negotiations which led up to the contract of November 30, 1885. True she did not inform plaintiff or his counsel that the act of mortgage of 1882 had never been completed. But he does not pretend that he was ignorant of that fact, which was as much within his reach as in that of Mrs. Dickenson. His own testimony shows how he discovered the whereabouts of his notes, which was by inquiry at the office of the custodian of all of Castell's papers. He says himself that he was advised by his counsel that he was liable on the notes because they were held by a third person, and that his whole line of conduct was thereafter shaped under the sense of that responsibility.

All the foregoing considerations logically lead to the conclusion

Insurance Company vs. Levi et al.

that the two notes of $5000 each had been purchased by Mrs. Dickenson from Wm. J. Castell before maturity, for valuable consideration, in good faith and without the slightest knowledge or intimation of any irregularity or defect in his possession and control of the same. Hence we hold that plaintiff was liable on said notes, and that he is legally bound by the contract of November 30, 1885, by which he did, as he manifestly intended to, ratify the act of his agent in the previous transaction. Givanovich vs. Citizens' Bank, 26 Ann. 15 and authorities hereinabove referred to. The case is therefore with the defendant.

Judgment affirmed.