## No. 316.

### CHAFFE, POWELL & WEST VS. M. M. S. MACKENZIE.

1. Where the errors in the transcript are not imputable to the appellant, the appeal will not be dismissed.
2. The Code of Practice does not require that the bond for the appeal shall have the amount fixed in reference to the amount claimed, or the value of the property seized under a writ of attachment.
3. When the judgment is for the amount of the debt claimed, and damages for the wrongful swearing out of the attachment, the amount to extinguish each other *pro tanto*, the appeal bond which is given in reference to the judgment is not a voluntary execution or acquiescence in the same.
4. In order to maintain an attachment there must be some proof that at the time the writ issued the defendant had done, or was about to do, the act charged. The intent must also exist to defraud, or to give unfair preference. But this intent usually can only be proved by the acts of the defendant and the conclusion to be drawn from these.

Chaffe, Powell & West vs. Mackenzie.

5. Where the defendant makes proposals to the plaintiff to prevent suit against him, in negotiating for a compromise or settlement of the debt, the offer can not be used in evidence against the defendant, unless there is some fact or distinct liability admitted.

6. When the plaintiff by rule prays for the production of books and papers of the defendant, and he answers that they are not in his possession or control, and no effort is made to traverse and contradict the answer, and in the progress of the trial the defendant ascertains where they are, and produces them, and offers. them in evidence, this is a substantial compliance with the order, although there may be a well grounded suspicion that through the influence of the defendant they had been secreted.

7. Where a party owes another a debt, evidenced by promissory notes, and another debt on open account for cotton shipped, and he ships cotton and immediately draws against it to the full amount, and sometimes in excess of it, he can not require that the proceeds of the sale of the cotton be imputed to the extinguishment of the notes, particularly when he knows, from an account stated to him, to which he makes no objection, and from the course of dealing with the creditor, that the proceeds of the sale of the cotton have been imputed to the cotton account.

8. On the dissolution of an attachment, on the grounds that the defendant has disposed of his property, or is about to dispose of it, with intent to defraud, the defendant can recover only actual damages, unless he shows the attachment issued from malicious motives to annoy, distress and injure him.

APPEAL from the Second District Court, Parish of Webster. Boone, J.

Boatner & Lamkin for Plaintiffs and Appellants.

Watkins & Watkins for Defendant and Appellee:

1. If the appellant has acquiesced in the judgment of the lower court the appeal will be dismissed. 32 An. 947, Stinson vs. O'Neal; 40 An. 201; Board of Church Wardens vs. Bishop et al.; also dissenting opinion of Justices Todd and Watkins in 39 An. 84, Duncan vs. Wise.

2. Transcript made up by the instructions and under supervision of appellant's counsel, errors therein will be imputed to the appellant and the appeal dismissed. 38 An. 84, Samuels et al. vs. Brownlee et al., and cases cited.

3. Affidavit for attachment that is wanting in elements of positiveness, or is conflicting or uncertain in its allegations, is defective and bad. 32 An. 340, Hernsheim & Bros. vs. Levy; Drake on Attachments, Secs. 101 to 103; Am. and Eng. Enc. of Law, Vol. 1, p. 904, with Notes; Cross on Pleading, p. 292, Sec. 380, 14 An. 36; 11 An. 438, 622.

4. "The right to attach depends on the state of facts existing at the time the writ issues." 32 An. 348; Hernsheim & Bros. vs. Levy, 35 An. 285; 41 An. 227, National Bank vs. Moss & Co. et al., quoting 1st An. 98; 10 An. 324; 3 Howard, pp. 509, 512; Manning's Unreported Cases, 220.

5. "The intent to defraud must exist to justify an attachment." 35 An. 339, Ferguson vs. Chostont, C. P. 240; 22 An. 531; 24 An. 82, 586; 26 An. 258; 28 An. 309; 30 An. 393; 32 An. 340, 344; 35 An. 624; Lehman, Abram & Co. vs. McFarland & Dupre, p. 624; 37 An. 722; 32 An. 340.

Chaffe, Powell & West vs. Mackenzie.

6.  Damages will be allowed on the dissolution of an attachment.  32 An. 340; 37 An. 722; 30 An. 1140; 33.An. 6; Byrne & Co. vs. Gardner & Co., 34 An. 1203; 38 An. 353.

7.  The books, etc., ordered produced under C. P. 140 and 473 must be in "the possession" of the adverse party and material to the cause.  C. P. 140 and 473.

8.  There must be an order signed describing the books, etc., to be produced.  C. P. 473 and C. P. 140 allows the party ruled to produce books, etc., to show "by satisfactory evidence the impossibility of producing such documents."  C. P. 140, 473.

9.  The rule to produce must be answered, tried and on motion made absolute before the facts, and then only specific facts, alleged can be considered in evidence as taken for confessed.  C. P. 140, 473; 18 An. 203; 18 An. 300; 30 An. 825, 827; 30 An. 514.

10.  If the day fixed for the trial of the cause is the only day on which books, etc., can be ordered produced (C. P. 473; 18 An. 203; 30 An. 825), defendant is relieved of the production of books, etc., as the cause was put at issue on the 9th, and by rule of court fixed for trial on that day, and the rule to produce only filed on the 14th, when the case had been called for trial, and trial immediately proceeded with before jury.

11.  The case of J. B. Morrison & Co. vs. Andrew J. Butler (18 An. 203), which decides that the court can not order the production of books, etc., on any other day than the day fixed for the trial of the cause, is overruled in same case (page 500) of same volume, by same court, between same parties, where it is decided that Art. C. P. 473 is only directory, and court may order books, etc., produced on any day.  In this case no order was signed at all for the production of the books, etc., and no day fixed for their production.  They were produced "on the trial," as ordered in the entry on the minutes of the court.

12.  A transaction or compromise is defined by R. C. C. 3071 as an agreement between parties for "preventing or putting an end to a lawsuit." An offer of compromise can not be used in evidence.  1 Greene Ev. 192; 19 An. 362; H. D., p. 508, Vol. 1.

13.  When a debtor owes two debts to same creditor, payments made by him are imputed to the extinguishment of the most onerous debt.  30 An. 1225, 1263; 32 An. 142; 15 An. 457, 526; 24 An. 472.

14.  "When there is a conflict in the evidence, the verdict of the jury will not be set aside," nor will the estimate of damages fixed by the jury be changed.  39 An. 610, 929, Fox & Co. vs. Jones; 37 An. 623, 655, and a long list of cases cited in H. D., p. 92, No. 1.

The opinion of the court was delivered by

McENERY, J.  The defendant moves to dismiss this appellant on the grounds, (1) errors in the transcript imputable to the appellant, and (2) acquiescence in the judgment.

1.  The errors in the transcript are not of that character which would justify the dismissal of the appeal, even if they were imputed to the appellant.  But the affidavit of the attorney is attached to the transcript, which satisfies us that the errors complained of can not be attributed to the appellant.  The error in the certificate of the date of filing transcript is clear cut, and fully explained.  It was filed in this court in time.

Chaffe, Powell & West vs. Mackenzie.

2. The alleged acquiescence in the judgment is that the appeal bond is fixed in accordance with the judgment rendered. The bond is given strictly in pursuance of Article 575 C. P. This article does not require that the bond shall be fixed in relation to the amount claimed in the suit, or the amount of property seized under the attachment. The motion to dismiss is denied.

The plaintiffs sued the defendant on five promissory notes executed by the defendant, one for the sum of $2054.80, due 15th October, 1890; one for $3097.04, due 6th November, 1890; one for $5000, due 15th November, 1890; one for $5000, due 15th December, 1890; one for $5000, due 15th January, 1891, all bearing 8 per cent. interest per annum from maturity. The plaintiffs accompanied this suit with an attachment. The reasons assigned for the same were that the defendant had converted, or was about to convert, his property into money or evidences of debt, with the intent to place it beyond the reach of his creditors. On the same day (24th April, 1891) that the attachment issued the property of the defendant, comprising his mercantile establishments, and a stock of goods in a branch store, and real estate in the parish of Webster, was seized.

The defendant filed a motion to dissolve the attachment, on the ground of the insufficiency of the affidavit, the untruthfulness of the allegations for the attachment, insufficiency of the bond. His motion was referred to the merits. The defendant answered, in which he alleged that the notes had been extinguished by the proceeds of the shipments of cotton made by him to the plaintiffs, which ought to have been imputed to the notes, as they were the most onerous debt, and not to the open account, due by the defendant to the plaintiffs.

He asked for $45,000 damages, itemized as follows: First, loss of profits in his business; second, actual deterioration of his stock while in the sheriff's hands; third, deterioration in value from the reputation of being locked up and bankrupt stock; fourth, loss of business; fifth, being prevented from making collections; sixth, damage to his credit and reputation as a merchant; seventh, loss of profitable mercantile transactions and trade with a valuable and growing class of customers; eighth, damage to his feelings, annoyance, mortification, and vexation; ninth, counsel fees incurred in defending the attachment.

S. D. Rawlins intervened in the suit.

The case was submitted to a jury.

There was a verdict and judgment for the defendant, dissolving the attachment, with $30,000 damages, and allowing plaintiffs' demands, the debts to extinguish each other *pro tanto*. The intervention of Rawlins was dismissed. The plaintiffs have appealed.

The evidence fails to sustain the allegations in plaintiffs' petition, that the defendant had converted or was about to convert his property into money, or evidences of debt, with the intention to defraud his creditors, or to grant an unfair preference to some of them.

In order to sustain the attachment, there must be proof that, at the time the writ issued, the defendant had done, or was about to do, the acts charged. The intent, also, must exist, to defraud, or to give an unfair preference. This intent, which rests in the bosom of the defendant, can only be shown by the acts and declarations of the defendant, and the conclusions to be drawn from them.

The plaintiffs rely on certain proposals made to plaintiffs by defendant; to the disposition of eleven bales of cotton on the day the attachment issued, and on defendant's failure to produce his books under the order of court.

We think the disposition of the eleven bales has been satisfactorily explained by defendant.

The proposals made to the plaintiffs were to prevent a suit against him. The amount of plaintiffs' claim was not in dispute. Before the proposition was made, which was the basis of the attachment, plaintiff Chaffe and the defendant had had a conference at defendant's house, in relation to the manner in which defendant's indebtedness could be liquidated. After this, the claim was put into the hands of plaintiffs' attorney, who notified the defendant to meet him and one of the plaintiffs at Monroe.

The object for which the conference was called is thus stated by plaintiffs' attorney:

C. J. Boatner, sworn on part of plaintiffs, states that the interview between the defendant and Mr. West, of plaintiffs' firm, at the office of Boatner & Lamkin, of Monroe, was for the purpose of ascertaining if defendant would pay, or secure the payment of, plaintiffs' claim against him. Defendant made certain propositions to the plaintiffs in settlement of their debt, but nothing in compromise as I understood it, defendant claiming that plaintiffs would realize their claim in full, and there being no contest developed there as to amount of

defendant's indebtedness to plaintiffs. This, so far as I heard, was what transpired between the parties.

At this conference the defendant repeated what he had previously proposed to one of the plaintiffs. He also proposed to the plaintiffs that he would, for the consideration of $4000, execute a sale to the plaintiffs of all of his property, or they could levy an attachment on the same. On an objection by plaintiffs that such a transaction would not stand a legal test, he suggested the manner in which the evidence could be suppressed.

"An offer to buy peace is not to be taken advantage of for purposes of evidence, unless some fact, or distinct liability, be admitted in the offer, since the offer may have resulted, not from the consciousness of indebtedness, but from a desire to avoid litigation." 19 An. 363.

The facts attempted to be prcved by plaintiffs are not facts admitting a distinct liability, but were proposals that occurred in the conversation or negotiations to effect a settlement of the claim.

This evidence was, therefore, properly rejected.

But if competent evidence it would not sustain the attachment. The proposition or offer was made to plaintiffs for their benefit. It would have probably authorized an attachment by another creditor, but it is not apparent in what manner the offer to plaintiffs has injured them, or in what manner the intent to defraud his other creditors could justify an attachment on a proposed sale which would inure exclusively to their benefit. There is no evidence that any such proposition was ever made to any other creditor.

Article 140 of the Code of Practice declares that courts may, at the request of one of the parties, decree that the other party bring into court the books, papers and other documents which are in his possession and which are material in the cause, provided the party requesting their production declares in writing and on oath what are the facts he wishes to establish by such books, papers, or other documents, and on the refusal of the party thus called upon to comply with the order, the facts stated and sworn to shall be considered as having been confessed until satisfactory evidence of the impossibility of producing such documents. Under this article the plaintiffs filed a rule on the defendant to produce his books, papers, etc., on the day fixed for the trial. He answered that the books, etc., were not in his possession or control, but were in his storehouse, which

Chaffe, Powell & West vs. Mackenzie.

was under seizure. No effort was made on the part of plaintiffs to show that the books and papers called for were in defendant's possession. Search was made for them in the storehouse, but they could not be found. A telegram was received from defendant's former clerk, designating the place where they were placed. They were then produced and offered in evidence by the defendant, but objection was made by plaintiffs.

There were very suspicious circumstances attending the secreting of the books in a desk in the storehouse, probably induced by defendant's instructions to the clerk. But they were produced before any attempt had been made to compel the defendant to show the impossibility of producing them. The production of the books and papers was a substantial compliance with the order, as there had been no trial on the rule to produce, establishing the truth or falsity of defendant's answer to the rule.

Defendant avers in his answer that the notes sued on have been extinguished by the proceeds of cotton shipped to plaintiffs, and which should have been applied to them, as the notes were the most onerous debts owing by defendant to plaintiffs. The evidence does not sanction any such pretension, and is not borne out by the defendant's testimony. He swears there was an agreement with plaintiffs to that effect. No such agreement is shown to have been made.

The notes sued on were discounted and the proceeds placed to defendant's credit. Money was advanced to him to buy cotton for plaintiffs. With each shipment of cotton, he drew on plaintiffs for the proceeds, in advance, of the value of the shipments.

The plaintiffs furnished the defendant with full statement of his accounts, showing the appropriation of the proceeds of the cotton. In this statement a memorandum was attached showing that the notes had not been charged in the account. The course of dealing between plaintiffs and defendant shows conclusively that there was not only no agreement to extinguish the notes by the shipments of cotton, but that there was no intention that the proceeds of the sale of the cotton should be imputed to their extinguishment.

The acquiescence, silence, and consequent approval of the stated account furnished defendant by the plaintiffs, is an effectual disposal of this part of the case. 2 An. 28; McLean & Kendall vs. Hunsucker, 30 An.

The evidence fully sustains plaintiffs' demand on the notes. There seems to be no serious controversy on this point.

The only remaining question is to ascertain the amount of damages suffered by the defendant by the illegal seizure and detention of his property.

(1) Loss of profits in business and interruption of business. There is no evidence whatever to base any calculation of damages on this claim. It is true the defendant aggregated the amount of his loss, but he does not state a single fact or circumstance to sustain his estimate. It is a bare declaration, and the same be said of items 5 and 7. He does not show that he has lost anything from this source.

(6) Damage to his credit and reputation as a merchant.

The defendant owed the plaintiffs a large amount. He was unable to pay the amount. He was unquestionably insolvent, although this fact was not generally known. The plaintiffs had a right to sue for their debt. His real condition would then have been disclosed. The loss of credit resulted from the suit and not from the attachment alone. We do not think that the attachment proceedings have been the direct cause of his loss of credit. The witnesses, upon whom he relies for an estimate of damages on this item, were mainly those whose claims he had discounted, thus establishing a credit with money he obtained from the plaintiffs, and which ought to have gone to purchase cotton to liquidate his indebtedness. But there is no evidence that he has suffered a loss of credit in any particular direction. The witnesses say, before the attachment, they would have credited him; that his commercial standing was good, but since the attachment, knowing his condition they would not extend credit to him. His financial condition was a fact soon to be disclosed by the suit, without the aid of the attachment. 33 An. 8.

(8) Damage to his feelings, annoyance, mortification and vexation.

On this item there is no evidence upon which to make an estimate, even were it in a case like this advisable. It is not shown that the attachment was issued maliciously. Steinhart vs. Lamore, 41 An. 835.

(9) Counsel fees.

We think $1000 a just estimate of the services of counsel in dissolving the attachment. The case has evidently been one of protracted litigation, and the amount involved is large.

(2) Damage to stock and property by the attachment.

The goods seized have evidently been damaged by the seizure. The defendant's witnesses in estimating the damage have done so without a personal inspection of the goods. They base their evidence solely upon hypothesis. And the witnesses for the plaintiff, who examined the stock, did not do it with that particularity to detail which would give a correct estimate. It shows, however, that the stock was a broken one, consisting mainly of winter goods, left over from the previous year. All the witnesses who made a personal inspection of the goods state that they were well cared for, free from dirt and moths, so far as their casual examination permitted them to ascertain their condition. Some of the goods they estimate as worthless and some damaged, aggregating not more than $400.

We are satisfied, however, that this estimate is too low. Experience teaches that a stock of goods, seized and stored during the summer months, must necessarily deteriorate in value. They are generally in the hands of men unaccustomed to handle them and unacquainted with the many methods used for their preservation. Dust will necessarily accumulate, moths will appear, and their general appearance by frequent handling will not add to their saleability.

The evidence of all the witnesses shows that a stock of goods held over from one season to the other, deteriorates in value, and the estimate is from 20 to 50 per cent. The greater portion of these goods was winter stock, from the previous winter. The season had passed for their sale. The stock seized was inventoried at $20,800, cost price. Deducting 20 per cent., the lowest estimate for depreciation, the cash or salable value would be $16,640. All the witnesses agree that a stock of goods known as bankrupt stock depreciates in value, regardless of its condition. This estimate is from 25 per cent. to 60 per cent. Adopting as a fair per cent. for depreciation 25 per cent. we will estimate the damage on the value of the stock, $16,640, at $4150. We therefore estimate the damages suffered by the defendant for attorney's fees and damage to stock of merchandise at $5150.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended so as to allow the defendant $5150 damages, and in all other respects it be affirmed. The appellant to pay costs of appeal.