(38 South. 594.)

No. 15,428.

HILLARD v. TAYLOR.*

(Jan. 4, 1905. On the Merits, April 24, 1905.)

APPEAL—MOTION TO DISMISS—PETITION — EXCEPTIONS—FRAUDULENT MORTGAGE — NEGOTIABILITY — VALIDITY — CONSIDERATION — BONA FIDE HOLDERS — SUBSEQUENT TRANSFER—TAX SALE—PURCHASE BY REAL OWNER.

1. On a suggestion made by a party who had taken a devolutive appeal, the court on the return day of the appeal extended the time for

*Rehearing denied May 22, 1905.

filing the transcript of appeal. It was duly filed under the terms of the extension. Thereafter appellee moved to dismiss the appeal on the ground that the inability of the clerk to have made out the transcript for the return day was due to the delay of the appellant to file his appeal bond. Appellant had stated in his application for an extension that there had been delay occasioned by pending propositions made by the appellee for a compromise. The delays for a devolutive appeal had not yet expired. The court, for reasons assigned, refused to dismiss the appeal.

On the Merits.

2. Though the petition be of doubtful sufficiency, the court will overrule an exception of no cause of action where there are allegations of fraud and conspiracy, and under certain phases of the evidence a cause of action might appear.

3. While the mortgage is negotiable, and follows the note it secures, yet it is not governed by the commercial law like the note, and does not enjoy the same perfect negotiability. Hence, where the ostensible owner of property has fraudulently mortgaged it and negotiated the mortgage paper, the right of the real owner to contest the validity of the mortgage is not to be determined exclusively from the consideration of whether the mortgage paper was negotiable, and was acquired for value, in good faith, and before maturity, but rather from the consideration of whether, under all the circumstances of the case, he is estopped from doing so.

4. Until the contrary is made to appear, negotiable notes in the hands of a third person are presumed to have been acquired in good faith, for value before maturity.

5. Notes so acquired are not vitiated in the hands of the holder by subsequent information of the infirmity of their origin.

6. The transferee of such a holder, though possessed of the same information, will acquire as good a title as he had.

7. Where, in the acquisition of the notes from the bona fide holder, the transferee is represented by the person who originally negotiated the notes in fraud, this agency may give rise, as matter of fact, to suspicions and inferences, but will not ipso facto, as matter of law, vitiate the title of the transferee; it having been the principal himself acting through the agent.

8. Failure to annex to the petition a copy of the authentic act upon which the suit is brought cannot be taken advantage of by exception of no cause of action. The sole penalty of such failure is that the defendant may refuse to answer until the document is filed.

9. The real owner of property may buy it at a tax sale made to satisfy taxes assessed against the ostensible owner, and at such a sale the property will pass to him free of the mortgages consented upon it by the ostensible owner as a fraud upon him. He owes no duty, either to the

ostensible owner or to the latter's mortgagee, to pay the tax.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by C. J. Hillard against J. D. Taylor (Rachel L. Benton and others intervening). Judgment for plaintiff, and interveners appeal. Reversed.

Wickliffe & Falls and Peter Stifft, for appellants. George W. Flynn, for appellee Hillard. James Barcklay Rosser, Jr., for appellee Taylor. Henry L. Garland, Jr., for appellee sheriff of St. Tammany.

On Motion to Dismiss.

NICHOLLS, J. The appellants in this case obtained on the 30th of June, 1904, an order of appeal (suspensive or devolutive) from the judgment rendered against them on the 29th of June, 1904. This appeal was made returnable to the Supreme Court on the first Monday of November, 1904, conditioned on their furnishing bond in the sum of $250 for a devolutive appeal. They executed a bond for a devolutive appeal on the 27th of October, 1904.

On the 7th of November, 1904, on motion of the counsel of appellants, and on their filing with said motion an affidavit of the clerk of the trial court, this court ordered that the return day for filing the transcript of appeal be extended to the third Monday of November, 1904. On the 21st of November, 1904, on motion of appellants' counsel, accompanied by an affidavit of the clerk of the trial court, the return day for filing the transcript of appeal in the Supreme Court was extended to the 28th of November, 1904.

In the first affidavit of the clerk of court, sworn to on the 7th of November, he deposed that the transcript of appeal had not been completed, for the reason that there had not been sufficient time to complete same since the appeal bond was filed, on October 28, 1904, and that an additional delay until the third Monday of November, 1904, was necessary to enable him to complete the same.

In the second affidavit of the clerk, sworn to on the 21st of November, 1904, he deposed that, since his affidavit of November 7th was made, he had not been able to complete the transcript, for the reason that there had not been sufficient time to complete the transcript, and that an additional delay of seven days from the 21st of November was necessary to enable him to complete the same.

In the final application for an extension of time made by appellants on the 7th of November (the return day for the appeal), counsel stated that the "delay in filing appeal bond was caused by a pending compromise in the matter."

The transcript in the case was filed on the 28th of November, 1904.

On the 1st of December, 1904, the plaintiff filed a motion to dismiss the appeal on the ground that the affidavit of the clerk of the civil district court, sworn to on the 7th November, 1904, was not sufficient to warrant the granting of additional time; the clerk certifying that "there had not been sufficient time to complete the transcript since the appeal bond was filed, on the 28th of December, 1904."

Mover suggests to the court that the delay of "interveners and appellants in filing the bond of appeal cannot be urged as an excuse for the failure to file the transcript on the return day fixed, viz., for the first Monday of November, 1904, and the certificate of the clerk of the court setting forth the reasons why the transcript of appeal was not ready to be filed on the said return day was not sufficient to warrant an extension of time."

In the brief filed in support of the motion to dismiss, counsel contend that the failure of the appellants to file their bond of appeal in time for the clerk of court to commence to finish the transcript on or before the return day was a fault imputable to the appellants, as it was apparent that the clerk

had had ample time from June 30th until the third Monday in November (21st November)—a period of 122 working days—to complete the transcript, consisting of only 62 pages, excluding the testimony which was included therein. He maintains that appellants had not used due diligence in filing the appeal bond, and had not, on the face of the record, shown an excuse or reason for such unusual delay. Her counsel refer the court to Samuels v. Brownlee, 38 La. Ann. 34, and Chaffe v. Mackenzie, 43 La. Ann. 1062, 10 South. 369.

Counsel of appellants first claim that plaintiff's motion to dismiss was grounded on the insufficiency of the clerk's certificate as authorizing an extension of time, while the argument in his brief rests his motion upon an alleged fault imputable to the appellants, viz., that they had not filed the appeal bond in time to enable the clerk to make out the transcript before the return day.

Appellants admit that it is true there was a delay from June 30th to 28th October, 1904, in filing the appeal bond, but the cause or reason for the delay was set forth in the body of the motion, asking for an extension "as being a pending compromise of the case."

Counsel say in their brief:

"This is not denied, nor can it be denied, by the appellee. After the order of appeal was entered, within a week of that date, a proposition of compromise was made to these appellants; a written agreement drawn up and signed by them to compromise for a certain sum, delivered to the counsel for appellee, and by him forwarded to his principal for approval; a statement subsequently to appellants' counsel by appellee's counsel that appellee had been run over by a street car, and was in a hospital, unable to transact any business, with a request for delay until appellee could recover sufficiently to take the matter up; a continued waiting for a reply from appellee to his counsel (which reply has not yet been received) until a day or two before the filing of the appeal bond, when appellants' counsel were finally notified that appellee's counsel could get no answer from his client. All of these facts were stated to your honors in open court by appellants' counsel when applying for the first extension. None of these facts (which are included in the statement 'a pending compromise') can be denied by appellee. And can a litigant induce his adversary to delay action by

asking time to consider and act upon a compromise, and then make that delay a ground for dismissing that adversary without a hearing, especially when no law, rule of court, or of practice has been violated, nor any substantial or imaginary injury inflicted upon appellants? We rely upon the well-settled principle that the law favors compromises, and will not permit an effort to compromise, made in good faith, to be used as the basis of an attempt to take advantage of a party, which principle is too well settled to need the citation of authorities to support it."

Appellants insist that even if appellee was correct, and he could take advantage of this proposition to compromise, and the delay caused thereby, to file his motion, the motion to dismiss should be dismissed on the naked facts as shown by the record. They then proceed to enumerate what particular documents were necessary to have been copied in the transcript, stating that the whole transcript did not exceed 31 pages; and they submit that 12 days was ample time within which the clerk could have made out the transcript, had he not been able to do so for some reason in his office over which appellants had no control, and which could not be a fault imputable to them. Counsel say:

"The law does not require us to know the condition of the work in the clerk's office—the number of men he keeps employed there to make transcripts—and to guide ourselves by those facts in taking, or, rather, perfecting, our appeal. We submit that all that is required of us is that we should give our order, or, in this case, file our bond, long enough before the return day to enable the work to be done if it is taken up and carried on as soon as the bond is filed. This we have done. When we were notified by the clerk that the transcript could not be completed before the return day, we took the steps that the law and the rules of court point out to have the return day extended; and, when the clerk notified us a second time that he would need still more time, we again took the same steps. We cite the court to this second application, and the affidavit of the clerk thereto attached, to show that it was not our fault, but that the delay was occasioned by something within the office of the clerk, which we judge to be the fact that there happened to be at that time more work in his office than the usual force could handle. We submit to the court that all that it is incumbent upon us to do—to give the clerk time in which to do our work, without reference to whether he may have work for others at the same time—has been done by us, and that the fact that there were other transcripts.

to make out at the time is not our fault. If that were the rule, then the rights of a litigant would depend not upon his acts or that of his counsel, but upon the question of how many other litigants there were, and whether or not they were taking appeals in their cases. If there had been no other transcripts to make in the clerk's office at the time we filed our bond (October 28, 1904), we would have had our transcript in time, and the appellee could not have made this motion. There happened to be other transcripts at the time. Can that be imputed to appellants?"

"In conclusion, at best, the appellee has presented but a doubtful ground for dismissing this appeal. 'When the ground for dismissal is doubtful, the appeal will be maintained.' Guion v. Creditors of Succession of Guion, 19 La. Ann. 81; Planters' Bank v. Bass, 2 La. Ann. 434; Brickell v. Conner, 10 La. Ann. 235.

"We submit that the motion to dismiss should be denied."

The court was advised by the appellants at the time of their making application for an extension of time within which to file the transcript of appeal that there had been delay in the filing of their appeal bond, occasioned, it was stated, by negotiations then pending which looked to a compromise. The court's action was taken with knowledge of the facts. The application was acted on ex parte to this extent—that the appellee was not formally ruled into court, or notified to show cause why the prayer should not be granted—but appellees are presumed to be in court on the return day, and they are bound, without being specially notified, to take cognizance of motions of this character. They are granted, as the court has frequently stated, without prejudice to the right of the appellee to object, provided this right be exercised with due promptness. In this instance the appellee postponed objecting until after the delays for extension had passed, and after the transcript had been duly filed in the court under the terms of the extensions; and, in urging his objections, there was no denial made of the fact asserted in appellants' application as to the cause of the delay in filing the bond. Not only was this fact not then denied, but the detailed circumstances touching the negotiations for compromise, as set out in appellants' brief herein in opposition to the dismissal of the appeal, have been permitted to remain unanswered. Under the conditions stated, appellee could scarcely expect a dismissal of the appeal. We are exceedingly reluctant to dismiss appeals on grounds which evidently have occasioned no wrong nor injury. The appeal in this case is a devolutive appeal. So far as the mere fact of delay itself is concerned, appellants might have abstained from taking any action whatever until the close of the year allowed for taking such appeal, without legal ground of complaint against appellants' course. As matters stand, the only effect of ordering the dismissal would be to force (as the year for appealing devolutively has not expired) the appellants to the necessity of obtaining a new order of appeal, executing a new bond, and having service of citation duly made, as the transcript filed would not, under our rules, have to be duplicated.

Delay and costs would alone result from dismissing this appeal. We have repeatedly held in matters of injunction that we would not dissolve an injunction when it appeared that the party enjoining would be entitled upon its dissolution to the same remedy. We think this doctrine applicable to the present case.

The motion to dismiss is denied.

### On the Merits.

PROVOSTY, J. The matter before the court is a third opposition filed in this suit, the suit itself being an executory process. The question is whether the petition of third opposition shows a cause of action. The third opponents are the widow and the daughter of Edw. B. Benton. They allege that their said husband and father put the property against which the executory process has issued—then his, now theirs—in the name of Jos. D. Taylor, and that the latter, while the property stood of record in his

name, made two notes, of $5,000, each, to his own order, and by him indorsed, and, to secure. the same, executed on said property the mortgage that is now being foreclosed; that the mortgage notes "were discounted by the said Taylor, or delivered by him to some one to whom he was indebted, and that said notes came into the hands of the Germania Savings Bank or of a Mrs. Alexander, or were under the control of said bank, by which holder or holders the said notes were held until long after they were due"; that the Germania Savings Bank sued out executory process on the first maturing of said notes; that the defendant, Taylor, "representing that he was acting as agent and attorney in fact of the plaintiff, Hillard, purchased the two notes from the holder or holders thereof, and caused said notes to be transferred and delivered to the said Hillard through him, and that all of this was done long after said notes were due; that the said Hillard is bound by the knowledge of his agent; that said notes were purchased for a sum far below the amount ostensibly due thereon, and for far less than they would have been worth if they had been good and genuine notes and really secured by the above alleged mortgage, all of which was known to the said Hillard and the said Taylor; that the said Hillard now pretends, by virtue of the above transaction, to be the owner of the said two notes and alleged mortgage, and to be the real plaintiff in the above-described suit, entitled, 'Germania Savings Bank v. Jos. D. Taylor;' that said Hillard and said Taylor had complete knowledge that the said alleged mortgage was a fraud and a simulation, and that the said Taylor had had no right to execute the same"; that, notwithstanding the facts above set forth, the said Taylor and Hillard have conspired together to attempt to seize and sell said property in execution of the writ of executory process issued in this case, and have caused the sheriff to seize same under said writ and

to advertise, etc.; and that, unless restrained, etc.

The petition contains the further allegation that the property was sold at tax sale in 1896, and bought in by Benton; that the property was delivered by the tax collector to Benton, who took and had actual possession thereof and lived thereon until his death, in 1897, and that since that time it has been in the possession either of the sheriff or of the executrix of Benton; and that said tax sale has had the effect of doing away with the said mortgage.

It is further alleged that Taylor has judicially admitted the simulated character of his title.

The date of the execution of the notes and mortgage is alleged to have been June 18, 1902, and the notes are alleged to have been payable in one and two years from their date. The date of the filing of the executory process by the Germania Bank on the first maturing note is alleged to have been November 14, 1898. In argument, attention is called to the fact that on the note sued on in the present case there appears an indorsement to the effect that the payment of the note is extended to June 17, 1899; said indorsement being signed by Jos. D. Taylor, and dated just one day before the accomplishment of the five-years prescription of the note.

It will be noted that there is no specific allegation of the circumstances under which the bank or Mrs. Alexander acquired the notes, nor of whether Taylor's purchase was or not in part for himself, or of whether he owns any interest in them. On these essential points the allegations leave the court in doubt. But the court has concluded that, in view of the charges of fraud and conspiracy, the allegations are sufficient to open the door to evidence, and that inasmuch as, under certain phases of the evidence, the third opponents would have a cause of action, the case had better be sent to trial.

If the bank acquired the notes before maturity, in good faith, and for a valuable consideration, it held them free from equities; and, in the absence of contrary proof, the presumption would be that it. so held them. Cochrane v. Dickenson, 40 La. Ann. 127, 3 South. 841; Collins v. Gilbert, 94 U. S. 754, 24 L. Ed. 170; Fairex v. Bier, 37 La. Ann. 824; Saloy v. Hibernia Nat. Bank, 39 La. Ann. 90, 1 South. 657.

Subsequent information of the infirm origin of the notes would not have vitiated the notes in the hands of· the bank, and the bank could convey as good a title as it had itself, and, in order to do so, would not have had to practice concealment, but could do so openly and above board, with full revelation of the facts. The transferee, although fully advised of the original infirmity of the notes, would acquire as good a title as the transferror had. Therefore, unless Hillard was connected with the fraudulent negotiation of the notes, he would acquire from the bank as good a title as it had, even though fully advised either actually by the bank, or presumptively through the knowledge possessed by his agent, Taylor, of the fraudulent origin of the notes. Levy v. Ford, 41 La. Ann. 873, 6 South. 671, and authorities cited at page 879 of 41 La. Ann., page 674 of 6 South.; Howell v. Crane, 12 La. Ann. 126, 68 Am. Dec. 765, and authorities cited. As a matter of course, the notes would become extinguished by confusion to the extent of whatever interest Taylor might acquire in them, he being the debtor on them.

If Hillard could thus purchase the notes directly himself and get a good title, he could equally well purchase them through an agent, and could employ Taylor as such agent. So long as Taylor acted purely as the agent of Hillard, his acts, legally speaking, would be those of Hillard himself. Such intervention of Taylor might give rise to the inference, as a matter of fact, of his having an interest in the transaction, but could not give rise to a presumption, as a matter of law, of his not being simply an agent whose acts would be simply those of the principal himself.

While the mortgage is negotiable, and follows the note it secures, yet it is not governed by the commercial law, like the note, and does not enjoy the same perfect negotiability. Hence, where the ostensible owner of property has fraudulently mortgaged it, and negotiated the mortgage paper, the right of the real owner to contest the validity of the mortgage is not to be determined exclusively from the consideration of whether the mortgage paper was negotiable, and was acquired for value, in good faith, and before maturity, but rather from the consideration of whether, under all the circumstances of the case, he is estopped from so doing. Pertuit v. Damare, 50 La. Ann. 893, 24 South. 681.

The allegations concerning the tax sale show a cause of action of themselves. True, the tax collector's deed is authentic in the sense that it proves itself, and therefore, under article 174, Code Prac., requiring a copy of the authentic act on which the action is brought to be filed with the petition, the third opponents should have filed with their petition the copy of the tax deed which they allege is annexed to it and made part of it; but the facts in connection with the tax sale are fully set forth in the petition, and, since these facts are, for the purposes of the present trial, to be taken for true, the court fails to see what useful purpose in connection with the present trial the production of said copy could have subserved. The object of requiring the copy to be filed is to enable the defendant to know whether the allegations are true (Smith's Heirs v. Blunt, 2 La. 133); but in the instant case, for the purpose of the trial of the exception of no cause of action, the facts are admitted to be true, hence on the present trial the said copy could subserve no useful purpose. As

was held in the case of Smith's Heirs v. Blunt, just cited, the only consequence of not filing the authentic act is that the defendant may refuse to answer until it has been filed. The trouble in the cases cited by the learned counsel for Hillard was not so much that the copies had not been filed, as that the allegations of the petition were insufficient. The court was asked to read the act into the petition notwithstanding that it had not been filed, and naturally refused to do so.

If Benton acquired the property at all at tax sale, he acquired it free of the mortgage, for the tax privilege primed the mortgage, and at a judicial sale the property passes free of subsequent incumbrances. The only theory upon which the plaintiff can claim mortgage rights is that the property belonged to Taylor. The moment plaintiff repudiates that theory he goes out of court. Now, on that theory, Benton had as good a right as any one to buy the property at the tax sale. He owed no duty to the holders of the mortgage notes. The debt on them was not his, and the mortgage securing them had been executed as a fraud upon him.

Judgment set aside, exception of no cause of action overruled, and case remanded to be proceeded with according to law.

BREAUX, C. J., concurs in the decree.