## No. 12,680.

### E. J. PERTUIT VS. FELIX DAMARE.

Mortgages are not (as cutting off equities) negotiable in the sense of the law merchant.

A father who being tutor of his minor children receives into his possession as such as part of their inheritage from their grandmother, negotiable notes made by him to his own order and by himself endorsed, which notes represented the purchase price of property purchased by him, and were secured by special mortgage and vendor's privilege on the property purchased, became *ipso facto* the debtor of his children for the amount of the notes, the said debt being secured in their favor by special mortgage and vendor's privilege. The notes in the tutor's hands were the mere evidences of his debt to them.

| 50 | 893 |
|---|---|
| 51 | 1166 |

| 50 | 893 |
|---|---|
| 109 | 679 |

| 50 | 893 |
|---|---|
| 110 | 37 |

| 50 | 893 |
|---|---|
| 114 | 894 |

| 50 | 893 |
|---|---|
| 120 | 631 |

| 50 | 893 |
|---|---|
| e122 | 171 |

The tutor being so indebted to his children, could not alter the situation to their prejudice by illegally tranferring these notes before maturity to a third person. The rights of the transferee' *quoad* the mortgage and privilege are subordinated to those of the minors.

APPEAL from the Twentieth Judicial District Court for the Parish of St. James.    *Guion, J.* .

*Sims & Lambremont* for Plaintiff, Appellee.

*Edward N. Pugh* for Auguste Damaré, Under-tutor, Third Opponent and Intervenor, Appellant.

Argued and submitted December 30, 1897.
Opinion handed down February 23, 1898.
Rehearing refused May 30, 1898.

The opinion of the court was delivered by

NICHOLLS, C. J.    On the 23d of August, 1890, by act before E. D. Laiche, deputy clerk and notary public in and for the parish of St. James, Felix P. Poché sold and delivered to Felix Damaré a certain tract of land, described in said act, for and in consideration of the price of thirty-two thousand dollars, of which price three thousand four hundred and twenty dollars were paid cash, and the balance was represented by eight promissory notes executed by the purchaser to his own order and by himself endorsed for different amounts payable at different dates at the office of the clerk of court of the parish of St. James, the notes bearing interest at eight per cent. per annum from their date until paid.   These notes were, by the terms of purchase, secured as to payment by special mortgage on the property sold, vendor's privilege being retained.

On December 31, 1896, the plaintiff, Pertuit, took out executory process against the property mortgaged, as being the holder and owner of three of the eight notes representing, as stated, the purchase price of the same—to-wit: one note of two thousand dollars, maturing January, 1891; one note of four thousand dollars, maturing January 23, 1892, and one note of four thousand dollars, maturing January 23, 1893.   The act of sale and mortgage had been duly recorded in the record books of the parish of St. James.

On the 5th of January, 1897, Auguste Demaré, as under-tutor of the minors Felicie, Roger, Azema, Fernand and George Damaré, issue of the marriage of Leontine Jolly, deceased, with Felix Damaré, filed a petition in the District Court for St. James, in which he alleged:

That on the 30th June, 1890, Felix Damaré was confirmed as natural tutor of the said minors, and petitioner as their under-tutor.

That on the 12th of January, 1891, Mrs. Azema Bourgeois, widow of Cesar D. Jolly, the grandmother of the minors, died, leaving said minors and Cesar Felix Damaré, their brother, her sole heirs. That at the time of said Mrs. Azema Jolly's death, she was the owner and possessor of three promissory notes, made and subscribed by Felix Damaré, the father and tutor of said minors, under date of August 23, 1893, one for the sum of two thousand dollars, payable January 23, 1891, and two, each for the sum of four thousand dollars, payable respectively on January 23, 1892, and 1893, all to the order of said Felix Damaré, and endorsed in blank, bearing interest from date, at eight per cent. per annum; said notes being identified with an act of sale and mortgage passed before Emile J. Laiche, deputy clerk of court, and secured by special mortgage and vendor's privilege on the property of said Damaré, fully described and set forth in the said act of sale. That being the sole heirs of their said grandmother, Mrs. Jolly, and she being the owner of said notes at her death, the said notes became the property of said minors and of their brother. That their said property in said notes had never been divested, and that said minors and their brothers were still the owners of said notes. That Felix Damaré, their father and tutor, had never been authorized by any order of court, or by the advice of any family meeting, to dispose, in any manner, shape or form, either directly or indirectly, of said three notes, the property of said minors and of their brother. and that they were still vested with full ownership of said notes. That in his said capacity of under-tutor of said minors, he represented and showed that on the 31st of December, 1896, one Elphege J. Pertuit, claiming to be the holder of said three notes (the property of said minors and their brother) instituted, *via executiva* against Felix Damaré, the maker of said notes, and the tutor of said minors, in the suit entitled, Elphege J. Pertuit, vs. Felix Damaré, No. 1960 of the docket of said court. That he was advised and averred that said notes, on the

death of their grandmother (the said minors and their brother being her sole heirs) went into the charge and control of Felix Damaré, their tutor, by reason of their said heredity—Mrs. Jolly's succession never being opened and the said notes being her only property. That said Damaré, tutor, was absolutely without power or authority to part with said notes or in any way to dispose of the same; that he was absolutely without power to confer on any one the title to said notes, the property of said minors; that any one taking said notes from said Damaré, the maker of the same, was charged with notice and acted " *en pleine connaissance* " of the fact that said Damaré was without authority and power to destroy or impair, in the least, the ttile and ownership of said minors to said notes. That he distinctly charged and averred that said Pertuit acquired said notes long after maturity and with full knowledge of the title and ownership of said minors, in and to said notes, and that said Pertuit has no title or claim whatever to said notes or any part thereof. That the interest of said Damaré, tutor, and that of the minors were in conflict, and it was his duty as their tutor to intervene in said suit and protect the interest of the minors.

Should the court, however, hold that said minors were not the owners of said notes by reason of the fact that the notes made by and due by their tutor, as tutor, had the effect of extinguishing said notes and as creating a cash indebtedness by the tutor to said minors, then, and in that event, and under the reservation, he said and averred that said notes should be decreed to be extinguished and the lien and mortgage securing the same, canceled and erased.

That under no conceivable circumstances had Pertuit, the plaintiff in said suit, any title or claim in and to said notes, or any lien or mortgage bearing on said property. That the further proceeding of said Pertuit in said suit would cause minors irreparable injury and damage, and the same should be arrested and stopped until the decision of the present suit. That petitioner should be allowed and permitted to intervene in said suit, and said Pertuit should be enjoined from taking any further steps in said suit until further orders of the court.

In view of the premises, he prayed to be allowed to intervene in his said capacity in behalf of said minors; that Pertuit, the plaintiff, and Damaré, the defendant (the latter individually and as tutor), be cited; that judgment be rendered in favor of the minors and against

said defendants, decreeing, recognizing and adjudging that said minors are the owners in the proportion of one undivided sixth each of the said notes as heirs of their grandmother, Mrs. Jolly; that said notes be delivered and turned over to said minors, and said Pertuit be decreed to be absolutely without right or interest in and to said notes. Should the court, however, hold that said minors are not the owners of the notes, then, and in that event and under reservation, petitioner prayed that said notes and all the accessories thereto are extinguished and wiped out, and their tutor is indebted unto them for the amount of said notes as so much cash received by him (tutor) for account of said minors, and that said lien, and the lien and mortgage securing the same, be canceled and erased; that a writ of injunction issue against the plaintiff, Pertuit, enjoining and restraining him from taking any further steps or doing anything whatever in said suit until the further orders of the court; that after due proceedings said injunction be maintained and perpetuated, with costs.

An injunction was ordered to issue as prayed for, and was served upon the parties.

The plaintiff, Pertuit, answered, pleading, first, the general issue. Further answering, he averred that he acquired and held said notes through and from Paul D. Pertuit, a resident of the parish, well known therein, in good faith and for a valuable consideration; and that said Paul D. Pertuit acquired said notes in good faith and in the ordinary course of business, long before maturity, for a valuable consideration. That neither the said Paul Pertuit nor himself had ever had, at any time, notice of any of the matters set up in the petition of intervention and opposition. He, therefore, said that the intervention and opposition were not well founded in fact, law or equity. He prayed that they be rejected and dismissed with costs, reserving to him his action in a separate suit for the damages inflicted by the wrongful injunction sued out.

The District Court rendered judgment, decreeing the minors, Felicie, Roger, Azema, Fernand and George Damaré, to be the owners of five undivided sixths of the note of two thousand dollars sued on, together with five-sixths of the interest accrued and to accrue thereon, and recognizing the same to be secured by special mortgage and vendor's privilege upon the property described in the petition, taking effect from the 23d of August, 1890, and that to that extent E. J. Pertuit be decreed to have no right, title nor interest

57

therein; decreeing further Elphege J. Pertuit to be the owner of the other two notes of four thousand dollars each sued on, together with all interest accrued and to accrue thereon, and the said notes, in principal, interest and attorney's fees, to be secured by special mortgage and vendor's privilege, dating and taking effect from the 23d of August, 1893, upon all of the property described in the petition for executory process; decreeing further, that the demand of the third opponents, the minor children of Felix Damaré, to be recognized as the owners of said two notes be rejected and dismissed; that the injunction sued out by them be dissolved and set aside to that extent, and that in all other respects it be sustained and perpetuated; decreeing further that Elphege J. Pertuit be authorized to proceed with the seizure and sale of the property described, according to law, to pay and satisfy the amount of said two notes, in principal, interest, attorney's fees and costs of seizure and sale; that the costs incurred by the demand of the third opponents, since the filing of the petition of third opposition and injunction, be paid by the seizing creditor, Pertuit.

Third opponents appealed.

After the appeal was taken, Felix Damaré, the father and tutor of the minors, died, and one of the latter (Miss Felicie Damaré) became of age. On motion, Miss Felicie Damaré and Felix Damaré, Jr., who had been appointed tutor to the remaining minors, were made parties to the appeal, Felix Damaré, Jr., being made party as tutor. Appellee asked in the Supreme Court that the judgment be amended by rejecting the claim of the minors to the ownership of the two thousand dollar note; he also pleaded in aid of his own ownership of the notes the prescription *acquirendi causa* of three and five years; also as against any claim which Felix Damaré, Jr., might set up, the prescription *liberandi causa* of four years.

On the 23d of August, 1890, Judge Felix Poché sold to Felix Damaré, a certain plantation in the parish of St. James, which he had himself, upon the same day, purchased at a sale made in the succession of Cesar Désiré Jolly. The price of the property was thirty-two thousand dollars, of which three thousand four hundred and twenty dollars were paid cash and the balance of twenty-eight thousand five hundred and etghty dollars were represented by eight promissory notes of Damaré's, payable to his own order and by himself endorsed in blank for different amounts, and maturing at differ-

ent dates, bearing interest at eight per cent. per annum from their date until paid. Among these notes was one for six hundred and fifty dollars, and three for five thousand dollars each, these notes being secured by preference by special mortgage and vendor's privilege on an undivided half of the property; one note for two thousand nine hundred and thirty dollars, one note for two thousand dollars and two notes of four thousand dollars each.

These four notes were secured by special mortgage and vendor's privilege on the whole plantation—the note for two thousand nine hundred and thirty dollars being granted a preference of mortgage and payment over the second undivided half of the property. The note for two thousand dollars was payable on the 23d of January, 1891, and the two notes of two thousand dollors were payable on the 21st of January, 1892, and one on the 23d of January, 1893.

At the time of the sale made in the matter of the succession of Cesar D. Jolly, his wife, Mrs. Azema Bourgeois, held a mortgage claim against her husband on the property sold for ten thousand dollars.

The terms of the sale at which Judge Poché bought were cash, but we think it evident that while he got credit for the price, yet the price was settled by creditors of the succession of Jolly accepting Damaré's notes made in representation of the price of the sale from Poché to Damaré as so much cash. The widow of Jolly received in lieu of her mortgage claim the three notes of Damaré which matured on the 23d of January of the years 1891, 1892 and 1893, the first being, as stated, for two thousand dollars, and the two others for four thousand dollars each. Felix Damaré had married Leontine Jolly, the daughter of Cesar Jolly, and his wife, Azema Bourgeois. Mrs. Felix Damaré died in 1888, leaving as issue of her marriage six minor children. The father was confirmed as their tutor on the thirtieth day of June, 1890. The abstract of inventory which the law required to be recorded in order to secure by mortgage in favor of these children the faithful performance of the administration of their property by their tutor was recorded the same day. Cesar D. Jolly died in 1889. His widow, Azema Bourgeois, died on the 11th of February, 1891. At the time of her death she was living at the house of her son-in-law, Felix Damaré. She had then in her possession (in her armoir) the three notes of Damaré, which she had received from Judge Poché. The only heirs of Mrs. Jolly were her

grandchildren, the children of Damaré.    After the death of their grandmother, Damaré, who was then tutor of his children, took possession of those notes belonging to them as heirs of their grandmother, of which he was the maker.

On or about the 20th of February, 1891, after the maturity of the first note, he called upon Evariste Poché, a brother of Judge Poché, who was a practising attorney in the parish of St. James, who frequently made investments of the money of other parties for them, and having money of his own, made also, frequently, investments on his account, to ascertain whether he " would let him have money on these notes," and having received an affirmative reply, he several days later returned to Poché's office, where the latter gave him ten thousand dollars (seven thousand dollars in currency and three thousand dollars in a check), and Damaré delivered to him the notes. The giving of the notes and the payment of the money were simultaneous—being one single transaction.    Interest on these notes was paid by Damaré each year up to 1894, and endorsements to that effect were placed on the back of the notes.    All these payments were made to Evariste Poché.    Damaré dealt exclusively with him, not knowing until long afterward that the Pertuits had any connertion with or interest in the notes.    In the latter part of February, 1891, Paul Pertuit, one of the parttes for whom Poché was in the habit of making invsstments, called at the office of the latter and was shown these three notes by him.    They had endorsed upon each of them at that time the fact that lnterest had been paid thereon up to January 23, 1891; the endorsement on the two thousand dollar note which had matured on that date, stating additionally that payment of the note was extended to January 23, 1892.    Seeing that the notes were declared by their paraph to be secured by special mortgage and vendor's privilege, he bought them from Evariste Poché for ten thousand dollars, which he paid him in currency, taking possession of the notes and holding them until September, 189  , when under a business arrangement with his cousin (the plaintiff in executory proceedings), he transferred them to him.    Poché received the interest for Paul Pertuit as his agent.    Pertuit testified that at the time he acquired the notes from Poché he had no information in regard te any fact which led him to believe that Poché had no right to sell the notes.    Damaré, the tutor, was never authorized by a family meeting or by order of court to sell the notes.    Evariste Poché knew all

about the manner of the settlement of the succession of Désiré Jolly. Damaré, at the time of the transfer of the notes to him, told him that they were Mrs. Jolly's notes.

It is, under this condition of affairs, as shown by the evidence, that this case comes before us for decision as to the conflicting rights of the minors, claiming the ownership of the notes as not having had their title divested, either directly or indirectly by any act of theirs or of any one authorized thereto on their behalf and those of Paul Pertuit (substantially represented by the plaintiff in executory proceedings), claiming to be holder and owner of the notes, mortgage and privilege, as having purchased them in good faith for a valuable consideration and in due course of trade, and also as having purchased them (with the exception of the note for two thousand dollars) prior to their respective maturities.

It is contended by the under-tutor, on behalf of the minors, that by express law the sale of property belonging to a third person is null.  C. C. 2452.  That a person can not be deprived of his property without his consent, expressed or implied; that minors, in view of their incapacity and helpless condition, are specially under the protection of the law; that in a case where they are shown to have been despoiled of their property, without shadow or pretence of right or authority, they have a superior equity over one claiming owner - ship to the same, even in good faith, but under acts of conversion and wrong.  That the tutor of minors is prohibited from disposing of the property of his wards without the advice of a family meeting or orders of court.  That these minors have been guilty of no laches, imprudence or negligence of which (to their loss) others could take advantage.  That no act of estoppel is chargeable to them.  That plaintiff's whole claim of right rests upon invoking in his favor the provisions of the commercial law; that that law has never been formally adopted in Louisiana, and its provisions have never been permitted to stand when in opposition to positive and direct statute law of the State.  That the rules of the commercial law touching the transfer of notes and the cutting off of equities do not extend to the assignment of the mortgages and privileges by which notes are secured.  That plaintiff acquired at one and the same time these three notes of the same series, all of the same date, and all identified by paraph with the same notarial act.  That at the date of this acquisition one of the notes was past due; that that fact not only

opened the equities as to that particular note, but as to the others which plaintiff purchased at that time. That even if plaintiff could successfully hold the ownership of the notes as against the minors he could take nothing adversely to them *under the mortgage* and privilege securing the notes, it not being negotiable. That if plaintiff were permitted to do so, and to gain the full benefit of the special mortgage and vendor's privilege securing the notes adversely to them, the effect would be to permit their tutor by a sale of really his own debt to them, to give to his vendee a right which would prime their own, as they would be forced to fall back upon a general mortgage, dating from June, 1890, while plaintiff would claim upon a vendor's privilege upon the special property, which was the only property owned by their father; that the law did not contemplate and should not permit so iniquitous a result to the ruin of minors.

Plaintiff, on the other hand, invokes (as the under-tutor supposed he would invoke) in his own behalf the rules of the commercial law, which he maintains extends to and covers the rights of mortgage and privilege by which the notes were secured. He relies also upon the state of the public record, which he avers gave every reason to believe that the notes were legally owned and held by Evariste Poché, and legally secured in his hands as such holder by vendor's privilege and special mortgage. He asserts his absolute good faith in the premises and his utter ignorance of the fact that Damaré had any other connection with the notes than as maker of the same.

He contends that the purchase of the notes carried with it, as accessories thereto, the mortgage and privilege securing it (C. C. 2615), and that these accessories can not be separated from the principal obligation.

In the case at bar Felix Damaré, the maker of the notes and the transferee of the same to Evariste Poché, has no defence to make and could urge none, either to the notes or the mortgage or privilege. The notes are unquestionably due by him, and unquestionably secured by special mortgage and vendor's privilege; Damaré himself is, by his conduct and contract, estopped from contending to the contrary. The equities which are advanced in this suit are not those between the holder of the notes and mortgage and the maker, which is the ordinary form in which they are presented, but between different parties contesting, as between themselves, their respective titles to the notes and the right to the benefit of their accessory mortguge and privilege.

We are of the opinion that Damaré was without right and author-
ity to transfer the notes, as he did, to Evariste Poché without order
of court or legal proceedings. At the time he made the transfer not
only was Poché advised of the condition of affairs and the ownership
of the notes, but one of the three notes, then simultaneously trans-
fered to him, was past due.

The Supreme Court of Michigan in Able vs. McGuigan, 78 Mich.
415 (44 N. W. 393) and Shultz vs. Shultz (71 N. W. 858) was of the
opinion that a transfer of notes under such circumstances throw
open the equities as to all the notes matured and unmatured.

Damaré's action in the premises was a conversion or species of
theft of the property of his minor children, of whom he was then the
tutor. Independently of this, had *Evariste Poché* examined the
record he would have found that these notes, subscribed by Damaré
to his own order and by himself endorsed, had been by him, at the
time of the sale, delivered to his brother, Judge Poché, and the sub-
sequent possession of the same by Damaré, the maker, called for
examination and explanation.

There is no doubt that were Evariste Poche himself the plaintiff in
this suit, his claim would be repelled by bad faith and knowledge on
his part.

There is some doubt as to whether Poché in acquiring the notes did
so for his own account, or whether he did so as agent for Pertuit as
an undisclosed principal for whom he was in the habit of making
investments. We accept that as an actual fact, Paul Pertuit *himself*
was not aware at the time he received the notes from Poché that
they had been the property of Mrs. Jolly, or the minors, or that they
had ever returned into the possession of Felix Damaré, the maker.

The District Court was of the opinion that under the circumstances
of the case, the ownership of the note for two thousand with its
accessory mortgage and privilege had never passed out of the minors,
and so decreed, but it held that the ownership of the other two
notes, with their accompanying mortgage and vendor's privilege
were transferred to Pertuit and would hold good even as against the
minors under the rules of the commercial law, and the jurisprudence
of the State based upon a consideration of rights of parties taken on
the faith of the condition of the public records.

We have repeatedly enforced the rules of the commercial law in
their bearing upon equities as between the maker of negotiable notes

and holders and owners who acquired the same before maturity in due course of trade and for a valuable consideration. The matter has passed beyond the domain of discussion, and makers of notes execute the same in Louisiana with direct reference to their rights and obligations being determined and fixed by the principles of the commercial law and the usages of commerce. C. C. 1954, 1964. Though the commercial law has not been directly and formally adopted in this State as a whole, the existence of its influence and control over certain subjects has not only been recognized by our courts, but has also been directly referred to in the law itself, as, for instance, in Art. 1914 of the Civil Code.

We have on a number of occasions permitted the holders and owners of negotiable notes who had acquired the same under circumstances such as to cut off the equities between themselves and the maker, to also enforce for their benefit and advantage the mortgage by which the makers had secured payment of their note, although there were really defences to the notes, and although we hold to the opinion that mortgages were not negotiable in the sense of cutting off the equities in relation to the enforcement of mortgages. An examination of these cases will, we think, show in each of them there was an element of estoppel as against those seeking to go behind the mortgages to attack their validity and to question the right to their enforcement. It is true that in those cases we referred in connection with their special facts to the condition of the public records, but we have nowhere announced that the simple fact alone that the public record when examined would show the proper registry of a special mortgage as having been granted by one authorized to grant it without any indication on the face of the record going to show reasons why it was not legally enforceable, would carry with it *as a necessary unavoidable consequence against all parties in interest* that the mortgage would be permitted to be enforced acrording to its terms and tenor to their prejudice regardless of reasons which could be legally assigned *by particular parties* why this result should not be permitted to be reached.

To have made such an announcement would have been to have declared that we accepted the doctrine of the negotiability of mortgages to its fullest extent.

We have always taken care in the cases we have referred to, to disclaim holding the opinion that mortgages were negotiable in the

sense that word is used in the commercial law and to place our decisions therein upon the special circumstances of the particular cases.

In the consideration of those cases we have to keep in mind precisely who the parties to the litigation were and what were the relations they bore to the subject matter before the court.

In dealing with the rights of the minors we have to consider them strictly as third parties to the sale made by their father and tutor of their notes with their mortgage and privilege. They have no connection with that sale. Their father was confirmed as their tutor on the thirtieth day of June, 1890, and the faithful administration by the tutor of their property stands secured in their favor to the extent their claim was registered by the general mortgage given them by the law. In point of date and of registry that mortgage was first in order. *In addition to this their father was indebted to them in the full amount of the three notes with interest accrued and to accrue; this indebtedness being secured in their favor by special mortgage and vendor's privilege.*

Will the transfer by the tutor of these privilege-bearing notes (belonging to them) under the circumstances in which the transfer was made, be permitted to confer upon the holder of the notes a right superior in rank and effect to those held by the minors?

We have been called upon several times to examine into and determine the relative rights of a party holding an existing undisputed mortgage on certain property, and those of a party claiming to hold a mortgage superior to the same by reason of being the third holder of a negotiable promissory note which he had acquired before maturity, in good faith, for a valuable consideration, and which note was secured by a special mortgage originally ranking that held by the other party, and standing uncanceled on the public records when the note was acquired, when in point of fact the mortgage had been extinguished by reason of an anticipated payment made by the maker prior to the maturity of the note. In such case we have constantly held that although the third holder was entitled under the commercial law to a judgment on the notes against the maker, notwithstanding it had really been paid, yet he could not enforce the *mortgage to the detriment of third parties.* That the mortgage being merely an accessory obligation, fell, when in point of fact the note was paid and the subsequent reissuing of the note,

whether by the maker or by a person, who, having got possession of it, had, without right, reissued it, could not revive the mortgage to the prejudice of third parties.

See on this subject Hill vs. Hall, 4 Rob. 416; Schmidt vs. Frey, 8 Rob. 435; Bowman vs. McKelvoy & Bradford, 14 An. 587; Schinkel vs. Hanewinkel, 19 An. 260; Brou vs. Becnel, 20 An. 256; Doll vs. Rizotti, 20 An. 265, 266; Hoyle vs. Cazabat, 25 An. 440; Hall, Rod & Putnam vs. Chancere, 25 An. 493; Morris & Co. vs. White, 28 An. 855; Jennings vs. Vickers *et al.*, 31 An. 684; Butler vs. Slocomb, 33 An. 173; Taylor vs. Rous (Manning's Unreported Cases, page 331); Layman vs. Vicknair, 47 An. 684; Securities Co. vs. Talbert, 49 An. 1404. A mortgage would have to be granted *de novo*.

The principle lying behind these decisions is that the rights of holders of notes which they acquired before maturity, in good faith for a valuable consideration in due course of trade, are different as to the mortgages and privileges securing the note than they are as to the notes themselves; that mortgages and privileges are not negotiable in the sense in which that word is used in the commercial law, as necessarily and generally cutting off equities touching the rights of parties in relation to the mortgages.

The circumstances of a particular case and the relations of parties which would go to justify the barring out of actual equities must be exceptional.

In Bank vs. Flaithers, 45 An. 78, and in Layman vs. Vicknair, 47 An. 684, we expressly declared that these exceptional cases, when they were recognized, could not be made to rest upon the doctrine of the negotiability of mortgages under the law merchant.

In Butler vs. Slocomb, 33 An. 173, we said: " We must not be understood, however, as saying that in such cases (those referred to by the court) when the note passes from the mortgagee the mortgage does not pass with it, for such is not our opinion, inasmuch as the mortgage does follow the note. What we would say is that the mortgage when it does pass is acquired in the same condition that it was in before the mortgagee parted with his rights in, under or to the same. We assert and affirm the proposition that a mortgage when assignable and assigned can not be transferred to a third person so as to give him any greater right than the mortgagee himself possessed. In so doing we are supported by justice, by law and by jurisprudence."

In Securities Co. vs. Talbert, 49 An. 1404, we said: " We are next to inquire whether the plaintiff has by purchase of the notes acquired any greater right of protection than Norman F. Thompson had in the premises. Mrs. Talbert does not question the fact that plaintiff has a valid debt and a valid mortgage against her husband's property; what she denies is, that plaintiff's mortgage ranks her own. The original holder of the notes, as we have said, accepted his mortgage, not on the strength of the condition of the public record as claimed, but on reliance upon an incorrect statement and admission of fact made by the wife. The plaintiff had no dealings whatever with Talbert or his wife; he holds the mortgage as a mere assignee, and takes no greater rights in the premises as to the mortgage than his assignor had. The mortgage is not negotiable in the same sense as negotiable notes are negotiable, and the rules governing the equities in matters of negotiable notes have no bearing. We do not think that our decisions granting protection to third parties, dealing on the faith of the condition of the public record reach this case."

In Bank vs. Flathers, 45 An. 78, we said: " This court has very deliberately held that a *bona fide* holder of a negotiable note acquired before maturity, secured by a mortgage duly recorded, which has been executed by one having lawful authority to make it, and bearing on its face nothing to impeach its validity, can not be defeated in his mortgage rights by secret equities between the original parties existing before, or arising after its execution of which neither the act nor the public records afforded any notice, and of which he had no actual notice, *at least when such equities are opposed by the original mortgagor or on his right.*

We then proceeded to say that our opinion rested upon no assertion of the negotiability of mortgages, but upon other principles of law and equity, which forbid a man who, as a security for negotiable notes, had executed a mortgage, which he had full right and capacity to make on property belonging to himself by an act suggesting on its face no defect duly recorded and importing confession of judgment in favor not only of the mortgagee, but of any future holder of the note to impair its binding force and effect by pleading secret equities *created by his own fault, negligence or imprudence* and of which the subsequent holder of the notes had no notice and no means of information. When *cases arise in which the above elements, or some of*

*them, are missing, we will determine them according to their particular facts.*"

We do not stop to inquire here whether the proposition announced was not too broadly stated. The extract from the decision which we have copied is inserted in this opinion for the purpose of showing that our ruling was based not on the negotiability of mortgages, but upon the doctrine of estoppel, and to call attention to the paragraph which we have italicized in regard to the *parties* setting up the equities in which the general terms of the statement were qualified by the expression that the rule announced was correct, "*at least when such equities were opposed by the original mortgagor or in his rights.*"

*No equities are opposed in the case at bar by the mortgagor or in his right, but by third parties.*

We have examined the question of the effect of the transfer of a negotiable note before maturity in good faith and for a valuable consideration in due course of trade upon the mortgages and privileges securing the same for the purpose of ascertaining what plaintiff's position would be *quoad* the minors and what legal injury would result to them from accepting as true the proposition contended for by plaintiff in executory process, that he became the legal holder of the three notes sued on by his purchase from Evariste Poché, and also became, by said purchase, the owner of the mortgages and privilege securing the same. We should give to the plaintiff the benefit of that purchase as regards Damaré, and the property in question to the extent that this can be legally done without injury to the minors.

The minors have no greater interest in this matter than the securing of their original rights free from impairment. That being accomplished it is immaterial to them what may be the situation of the other parties as between themselves.

There can be no question, as we have said, that Felix Damaré, having received from Evariste Poché ten thousand dollars as the consideration of these *transfers of these three promissory notes* secured by mortgage would be estopped from denying his indebtedness to Pertuit upon the notes or contesting the mortgages. As between himself, Evariste Poché and Pertuit, he should be held to that position even though as between the minors and Poché and Pertuit the transfer were open to attack. It frequently happens that contracts are held good as between the con-

tracting parties while held null and void, in so far as the rights of third parties would be involved. We have an instance of that kind in matters calling for the exercise of the revocatory action (C. C. 1974) where the contract attacked is set aside in so far as it prejudices the attacking creditor, but is allowed, except to that extent, to stand; and again, in the matter of the sale of movable effects the property may have shifted by the sale and the rights of the purchaser as owner be protected as between himself and his vendor, and yet be ignored until actual change of possession as between himself and seizing creditors of that vendor. C. C. 1922. We conceive it to be our duty to solve the issues presented to us in manner such as shall protect the rights of all parties as fully as the situation will legally permit to be done in the exercise of our equity powers.

We recognize the justice and equity of permitting Pertuit as against Damaré to hold the notes with their accessories, and to enforce the same, and the difficulty and hardship as against him of separating the accessory from the principal obligations.

The difficulty in the way of accomplishing this equitable result in favor of Pertuit, and yet enabling the minors to avail themselves of the privilege in their behalf, which secured to them this indebtedness of their father, seems to rest upon the supposed necessity of being forced to detach this vendor's privilege from the notes, and to connect it with the general indebtedness to the minors by their father, resulting from the tutorship when the notes themselves, which evidenced the particular indebtedness which the privilege was intended to secure had been transferred to other parties.

We are of the opinion that Damaré, the tutor, was without power by an illegal transfer to Evariste Poché of the notes belonging to his wards, which he then held in his possession as tutor and *which represented in his hands an indebtedness by him to them of ten thousand dollars, secured by special mortgage and vendor's privilege, to transfer to him or any one holding under him as accessory obligations securing those notes any security which would prime the security by which payment by him of the amount of the notes was secured in favor of his minor children.* He might by such transfer have created obligations against himself which he would be estopped to deny or repudiate, but he was powerless to transfer to third parties his own existing debt to his children. A person can transfer his property but not his own debt. Debts are not property.

Had the tutor on the morning of the day upon which he transferred the notes to Evariste Poché borrowed ten thousand dollars from him and given him in representation of his debt his negotiable notes, of even date secured by special mortgage of that day, it would have been out of his power to have secured those notes by vendor's privilege, or to have given to that mortgage a date anterior to the date on which it was granted, or cause it to have the effect of priming anterior mortgages. The property being encumbered or charged with mortgages in favor of other parties, his capacity to mortgage would be held in check by the rights of the parties holding those mortgages. C. C. 490, 492. He could convey by mortgage to his mortgagee of that date no greater right in the thing mortgaged than he had himself. What he could not accomplish by a direct mortgage granted by him on the day of the transfer of the notes, he could not accomplish to the prejudice of third parties by disposing of notes not belonging to him, secured by a vendor's privilege and by a mortgage of anterior date.

His holding possession of them did not extend his power of mortgaging the property with such prejudicial retroactive effect. No transfer of the notes could give to the transferee any greater rights under the mortgage securing them than the transferrer could have legally vested in them by direct mortgage on that day. Besides this, while it is true that neither the tutor nor his transferees could insist upon holding that the effect of Damaré, being the tutor of his children, and of his being also their debtor upon the promissory notes of which he was the maker, would be to operate a presumptive fictitious payment of the notes, altering the character of the indebtedness, from a debt evidenced by note and secured by special mortgage and vendor's privilege into a general indebtedness through the tutorship, secured by the tutorship mortgage (Zeigler vs. His Creditors, 49 An. 175; Dodds vs. Lanaux, 45 An. 296; Schneider vs. Burns, 45 An. 882; Duranton, Vol. 20, p. 11; Pont, p. 481) we think the *minors would have the option* (if their rights would be otherwise prejudiced) to elect to hold their father's indebtedness to be of that character and to occupy any vantage ground and protection which that position might afford them as against acts of conversion of their property by their father. If the transfer of these notes by their father, made under the circumstances stated, could and should be held to have transferred them to Poché and his

assignee with their mortgages, then we think the minors could validly claim, if necessary, that prior to this transfer they had been fictitiously paid to them by their father, and that the legal situation would be that which would result from a reissue of notes by the maker after an anticipated payment, but *after an extinguishment of the mortgage and privilege securing them.* The existing mortgage having fallen, an act *de novo* would have been required to create a new mortgage.

If the effect of that situation would, under the decisions, be to permit the transferee of the notes to hold them as owners with their mortgages, their rights under the mortgage and privilege would be subordinated to the existing rights and equities of anterior creditors, among whom, under the circumstances of the supposed election, would be the minors appearing in this case, holding under their general mortgage. But unless this theory of a fictitious payment should be strictly limited in its effects to the parties to this litigation, neither would be benefited by its application, but on the contrary, it would operate to their prejudice. It would enure to the benefit of third parties *having no ground or reason to invoke the doctrine, as payment has not, in point of fact, been made.* There are on the property, privilege claims held by other persons concurrent with that of the minors, and these parties being bound by no equities, would, by reason of the privileges they hold, prime the general mortgage by which the rights of the minors would be secured, as well as prime those of Pertuit.

The minors can not be forced to fall back upon their general mortgage, or as upon a matter of general indebtedness, unless it should be to their interest so to do. As we have said when they became the owners of the three privilege notes involved in this litigation, *their father became their debtor to the amount of those notes with accrued and accruing interest secured by special mortgage and vendor's privilege. As between them the negotiability or non-negotiability of the notes was a matter of no moment. They merely were the evidence of their father's indebtedness. Of this special indebtedness so secured, their father could, by no wrongful act of his own, deprive them.* McCall vs. Mercier, 1 La. 347; Zeigler vs. His Creditors, 49 An. 175. If they were all of age to-day, and he were unwilling or unable to actually place those notes in their possession, they would none the less have the legal right as against him to institute proceedings upon the notes,

·explaining the cause of their not producing them, and to obtain judgment against him for the amount thereof with recognition in their favor of the vendor's privilege and special mortgage securing the same. Brown vs. Saddler, 13 An. 205. Damaré himself would be powerless to complain of the non-production of the notes ·or to urge that they had been by him transferred to third parties with their mortgage and privilege, and that he would be called upon to make a double payment. He would be estopped from raising ·such a defence as against his wards, and were he in fact to·be called upon to make a double payment he would occupy precisely the legal and just position which would be called for by his conduct—he would be justly estopped as well to his children as to Pertuit. A special feature of this particular case is, that the transferrer of the note to Poché (under whom Pertuit holds) was himself the very debtor at that time to third parties for a valuable consideration upon those notes, and that he would justly himself incur a double liability on accout of his illegal conduct. It would be no defence to the suit brought against him by his children that third parties had acquired rights in, to, or upon the notes, with their accessories and the property. Two parallel actions based upon the notes with their mortgage and privilege could very consistently and legally coexist against Damaré; one brought by Damaré's children against him, the other by Damaré against him. Pertuit certainly would have no legal ground of complaint that the children should institute such an action or obtain judgment against their father with recognition of their vendor's privilege. The relative legal rights of parties as resulting from the mortgages and vendor's privilege could be and would be open to be tested upon a sale of the property mortgaged. Pertuit might obtain judgment against Damaré for the amount of the notes in his possession ·with recognition in his favor of the vendor's privilege and mortgage, and the children also obtain judgment for the same amount with similar recognition of privilege and mortgage.

There would be two debts owed by Damaré. It is a mistake to suppose that the *acquisition by third parties of rights in respect to the notes and privilege and mortgage had the effect of destroying and extinguishing the minors' ownership of the debt evidenced by these notes and mortgages*, where the act on which these adverse rights rested were unauthorized acts and acts of conversion and spoliation. True it may be that for some ·pur-

poses and to some extent they might have to acknowledge the rights of others so acquired, but they would none the less still *retain their own rights of ownership*, for the act of sale was as to them null. C. C. 2452. Suppose that Damaré, at the maturity of the respective notes had paid Pertuit the amount thereof, would the notes have returned as extinguished notes with extinguished mortgage and privilege into his possession? Unquestionably not. Why not? Simply because though the transfer of the notes as between Damaré and Pertuit might be operative giving the latter rights of imperfect or qualified ownership therein, the minors' ownership of the notes and their right in the mortgage remained in force.

The return simply unfettered the notes and mortgages from the rights which had been temporarily impressed upon them to the extent that such rights had been legally impressed. From this it would appear that a double set of rights could legally coexist in respect to these notes.

Property held in trust by a trustee can always be followed when converted so long as the property can be followed and identified. Third parties may have acquired rights, but the owners have lost none of their own without their consent express or implied or without their fault. This case presents simply the question as to the *extent to which third parties have acquired* rights to the detriment of the minors, for the minors' rights are intact. Pertuit, as holder of the notes, could obtain judgment thereon, record the judgment in his own favor, a judicial mortgage—execute the judgment by writ of *fi. fa.* and obtain a privilege by seizure which would enure to his individual benefit, but *so far as the property mortgaged is concerned* he could *never under the mortgage obtain* a preference of payment out of the proceeds thereof which would prime the rights of the actual owners of the notes with their privilege and mortgage. He can take nothing under the mortgage and privilege to the prejudice of those parties. So long as the notes with their privilege and mortgage stand with actual existing rights of the minors therein they bar the way to any claim of preference advanced by him.

Damaré, the father and tutor of the minors, is now dead. The rights of the minors have become fixed. A new tutor has been appointed to them, authorized to enforce those rights in all respects. In view of all the facts and circumstances of this particular case, we think the course to be pursued in order to guard the interests of all

58

parties and to prejudice the legal rights of none is to give effect as between the plaintiff and Felix Damaré, Sr., to the transfer of the notes declared on in the executory proceedings in this case and to the transfer of the accessory obligations securing the payment of those notes, and to authorize the enforcement of payment of said notes by the plaintiff, but to subordinate the rights of the plaintiff in executory process to payment out of the proceeds of the sale of the property mortgaged to the prior payment out of those proceeds of the minors, represented therein by their under-tutor, and Miss Felicie Damaré to the full amount of the notes declared on with the interest thereon accrued to and to accrue with the right to plaintiff, E. J. Pertuit, to plead and to prove as far as the facts may justify any actual payment or extinguishment of the amount due by Damaré to his children, parties to this suit.

For the reasons herein assigned, it is ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the injunction taken out by Auguste Damaré as under-tutor of the minors named in the pleadings, be, and the same is set aside, and the plaintiff, E. J. Pertuit, as holder of the notes declared on by him, be and he is hereby authorized and permitted to proceed to the sale of the property mortgaged to secure the payment of said notes, but that his right as such of payment out of the proceeds of the sale of the said property be subordinated to a preference of payment out of the same to the minors on whose behalf the said under-tutor intervened herein to the full amount of the said notes with interest accrued and to accrue thereon, with the right reserved to plaintiff, E. J. Pertuit, to plead and to prove, as far as the facts may justify, any reduction upon the same by payment or extinguishment actually made thereof.

MR. JUSTICE BREAUX concurs in the decree.

MILLER, J., dissenting, filed a dissenting opinion in this case.

BLANCHARD, J., concurs with Miller.