(102 So. 513)

No. 26613.

## FIRST STATE BANK & TRUST CO. OF BOGALUSA v. CRAIN.

### In re FIRST STATE BANK & TRUST CO. OF BOGALUSA.

(Dec. 1, 1924.   Rehearing Denied Jan. 5, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Bills and notes** ⬤➞151—Notes not nonnegotiable because attached to lease.

Attaching of notes to lease did not destroy negotiability of notes, but merely gave transferee notice that notes were rent notes.

2. **Bills and notes** ⬤➞343—Transferee of rent notes attached to lease did not take them subject to terms of lease.

Transferee of rent notes attached to lease when delivered to him did not take notes subject to terms and conditions of lease.

3. **Bills and notes** ⬤➞343—Transferee of rent notes attached to lease could not take advantage of clause accelerating maturity.

Transferee of rent notes attached to lease, not being a party to lease, could not take advantage of clause therein not appearing in notes themselves making failure to pay one note mature the rest.

4. **Bills and notes** ⬤➞529—Judgment rendered on all rent notes, in absence of plea of prematurity of suit as to notes which had not matured.

In transferee's action on rent notes, in which defendant did not plead in limine prematurity of the suit as to notes which had not matured upon their face, the court will give judgment on all notes according to their tenor, they having since matured, but with interest from maturity only.

Suit by the First State Bank & Trust Company of Bogalusa against D. A. Crain. On plaintiff's application for writ of review to review judgment of Court of Appeal. Judgment of Court of Appeal reversed, and judgment rendered for plaintiff.

Miller & Miller, of Bogalusa, for applicant.

Ott & Rich, of Bogalusa, for respondent Crain.

ST. PAUL, J. On March 31, 1923, plaintiff brought suit against defendant on seven promissory notes of $45 each, the first thereof reading substantially as follows:

"*(Rent Note)*     Bogalusa, La., Oct. 7, 1922.

On March 1st, 1923, I * * * promise to pay to the order of Jasper Bosco, forty-five dollars, for value received, with 8 per cent. interest per annum * * * from maturity until paid, and 15 per cent. attorney's fees if not paid when due and placed with an attorney for collection.   Payable at First State Bank, Bogalusa, La.

"[Signed] · D. A. Crain.
"[Indorsed]   Jasper Bosco."

### I.

The other six notes are of like date and tenor except that they are made payable, respectively, on the 1st day of April, 1923, and of each succeeding month up to and including September, 1923.

So that when the suit was filed (March 31, 1923) only the *first* note had matured according to the tenor thereof. But plaintiff annexed to, and made part of, its petition a certain lease identified with said notes, according to which Jasper Bosco, the payee and indorser of said notes, leased to

defendant, the drawer of said notes, certain premises for a term of 12 months, beginning October 1, 1922, and ending September 30, 1923; all for a rental of $45 per month, payable monthly in advance, and represented in part by the notes herein sued upon. In which said lease it is stipulated that failure to pay any one of said notes at maturity shall cause all remaining notes to mature immediately and authorize the holder thereof to proceed at once to collect the entire balance due, together with reasonable attorney's fees.

## II.

It is admitted that plaintiff received said notes in due course and before maturity; that at the time it received them they were attached to said lease and plaintiff knew they were *rent notes* given for future rent in accordance with said lease.

It is further admitted that said lease was a sublease, said Jasper Bosco having himself leased said premises from one Pizzolato, the owner thereof; that prior to the maturity of any of the notes herein sued upon said Bosco had defaulted upon his lease with said Pizzolato; that the latter had thereupon re-entered the premises and deprived defendant of all further use thereof (unless under a new lease with himself.)

## III.

Defendant did not file any plea of *prematurity* as to the six notes due, according to their tenor, respectively on April 1, 1923, and monthly thereafter (of which more hereafter); but the defense is that said notes are not (under the circumstances) *unconditional* promises to pay, but mere conditional promises to pay *if value be received* in rent; and that same are therefore not *negotiable* notes, and were received by plaintiff subject to the equities existing between defendant and said Bosco, as to whom said notes were not due because of his (Bosco's) own failure to maintain defendant in the leased premises.

In Sadler v. White, 14 La. Ann. 177, this court said:

"If the consideration of the note had not failed at the time of its transfer, the maker cannot set up as a defense that the holder knew that there might be offsets against it."

In Bank v. Cason, 39 La. Ann. 865, 2 So. 881, the court said again:

"If it were known to the transferee of a negotiable * * * note, acquired for value and before maturity, on taking it that the consideration was future and contingent, and that there might be offsets against it, this would not make him liable for the equities between the original parties. * * * It cannot affect the negotiability of a note that its consideration is to be thereafter realized, or that from some contingency it may never be enjoyed."

In Martel v. Lafayette Sugar Refining Co., 153 La. 248, 95 So. 706, we said:

"This doctrine [above stated] was affirmed in Pavey v. Stauffer, 45 La. Ann. 353, 12 South. 512, 19 L. R. A. 716, and again in Marx v. Frey, 137 La. 948, 958, 69 South. 757, and is in accord with the general law of Negotiable Instruments. See 8 Corpus Juris, 509, § 718, and 3 Ruling Case Law, 1067, § 273.

"The holder of a negotiable rent note has been held entitled to recovery thereon, even where circumstances have obliged the tenant to pay the rent a second time. Marinoni v. Levy, 9 Orleans Appeals, 254, citing Barelli v. Szymanski, 14 La. Ann. 47, and Tulane Improvement Co. v. Green Photo Co., 124 La. 619, 50 South. 601."

## IV.

It is contended, however, that the notes sued upon were not *negotiable* rent notes, and much reliance is placed by defendant on the following extract from the opinion of the Court of Appeal:

"True, in this case, the notes bear the mark 'rent note,' but without any other clause or words declaring (them payable) 'as per contract,' as appeared in Continental Bank & Trust Co. v. Times Publishing Co., 142 La. 209, 76 So. 612, L. R. A. 1918B, 632. It is, however, admitted in the statement of fact that plaintiff knew at the time it acquired the notes that they represented the rent due on a contract of sublease in which the defendant

was the lessee; *that they were received by plaintiff while attached to a copy of said lease; were given in connection therewith and subject to said contract.*" (Italics ours.)

The words which we have *italicized* are (we think) a misconstruction of the agreed statement of facts which, in so far as pertinent, is as follows:

"(3) That said notes represented the rent due on a certain contract of sublease between Jasper Bosco and defendant for premises described in the pleading, *being given in connection with and subject to said contract.*" (Italics ours.)

"(5) That plaintiff actually knew the above facts at the time of the negotiation of said notes, *and received said notes while attached to a copy of said lease.*" (Italics ours.)

"Our interpretation thereof is that whilst it admits that the notes were received by plaintiff while attached to a copy of the lease, yet it was not intended to admit, and does not admit, that same were *given to plaintiff by Bosco* 'subject to said contract' but does admit only that same were *given by defendant to Bosco* 'subject to said contract.' Otherwise plaintiff would simply have been admitting itself out of court; for were it admitted that *plaintiff* had received said notes 'subject to said contract,' there would then have been no room for controversy herein, and the case would simply have decided itself."

### V.

In Continental Bank & Trust Co. v. Times Publishing Co., supra, the difficulty arose over the peculiar *form* in which the notes were drawn; it being on that account possible on the one hand to construe the notes as unconditional promises to pay $150 for "*value received (i. e., to be received in future rent) as per contract*"; or, on the other hand, as mere promises to pay "*as per contract; for value received (i. e., to be received in future rent).*"

In the original opinion handed down through Mr. Justice Provosty, the court held the notes to read in the *first* sense, viz., as absolute promises to pay $150 (*value to be received as per contract*); whilst on rehearthe court, through Chief Justice Monroe (Mr. Justice Provosty dissenting), held the notes to be promises (for value received) *to pay $150 as per contract,* saying:

"A promise is not unconditional which is followed, in the same sentence, by a stipulation to the effect that it will be fulfilled, as per another contract, whereby the payment is made contingent upon the nonhappening of fortuitous event."

In this connection, see Tyler v. Whitney Central Trust & Sav. Bank (our No. 26255) 157 La. 249, 102 So. 325.

Accordingly, it will be seen that the whole matter hinged upon whether the "as per contract" was connected with, and qualified, *the promise to pay;* or was connected with, and merely amplified, *the acknowledgment of value received.* And the court merely held that the "as per contract," in that instance, qualified the very promise to pay. Apart from this, the case decided nothing new or different from what had been repeatedly decided before. And the case is authority for no other proposition than that contained in the language and holding quoted above from the opinion of the Chief Justice; for the case clearly recognizes the doctrine that a mere statement in a note that it is a *rent note,* and that the consideration of the note is an installment of rent to become due in the future, does not destroy the negotiability of such note.

### VI.

[1, 2] The question therefore arises whether since the notes, when received by plaintiff, were attached to a copy of the lease in connection with which they had been given, plaintiff therefore must be held to have taken them subject to the terms and conditions of said lease. Our conclusion is that such is not the case; that the attaching of the notes to the lease and delivery of the latter to plaintiff merely brought notice to plaintiff that the notes were *rent notes,* as indeed already appeared on the face of the notes themselves. And, as we have already

said, such notice brought home to plaintiff did not destroy the negotiable character of the notes. But plaintiff did not thereby become a party to said lease; leases are not negotiable, or even transferable by mere delivery of the paper instrument by which they are evidenced.

The situation of holders of rent notes is perhaps somewhat analogous to that of holders of mortgage notes; and as transferees of a credit they may be entitled to such accessories as the suretyships, privileges, and mortgages by which the notes are secured (R. C. C. 2645). But such accessories are not negotiable in the same sense as the notes themselves, and are generally, or at least often, open to the equities between the original parties. Hillard v. Taylor, 114 La. 883, 38 So. 594; Pertuit v. Damare, 50 La. Ann. 893, 24 So. 681, and authorities there cited. And it is therefore not to be presumed that the purchaser of a negotiable note means to lessen his undoubted rights thereunder by voluntarily assuming the burdens of equities which might exist between the drawer and the original payee, any further than as to the accessories aforesaid. And we conclude that the mere physical taking of the written lease did not make plaintiff a party thereto, or thereby subject it to the equities between the maker and the payee of the notes.

### VII.

[3] On the other hand, since plaintiff did not become a party to the lease, it is not concerned in, and cannot take advantage of, that clause in the lease by which failure to pay one note matures all the rest; which clause does not appear in the notes themselves.

[4] Hence, had defendant pleaded in limine prematurity of the suit as to the six notes which had not matured upon their face, as he might have done, we would have maintained his plea and dismissed plaintiff's suit as to these six notes. But defendant has made no such plea, and we must therefore give judgment on all seven notes according to their tenor. But since the maturity of the six notes was not advanced by failure to pay the first, it follows that said six notes bear interest only from their respective maturities; and judgment will be rendered accordingly.

### Decree.

The judgment of the Court of Appeal is therefore reversed, and it is now ordered that plaintiff, First State Bank & Trust Company of Bogalusa, do have judgment against defendant, D. A. Crain, for the full sum of $315, with 8 per cent. interest thereon as follows:

On $45 from March 1, 1923, until paid.
On $45 from April 1, 1923, until paid.
On $45 from May 1, 1923, until paid.
On $45 from June 1, 1923, until paid.
On $45 from July 1, 1923, until paid.
On $45 from August 1, 1923, until paid.
On $45 from September 1, 1923, until paid.
Together with 15 per cent. attorney's fees upon the whole, and all costs.